Ronald S. Hodges (SBN 150586)
*rhodges@goeforlaw.com*
Ashley N. Kinder (SBN 363008)
*akinder@goeforlaw.com*
Taylor DeRosa (SBN 319853)
*tderosa@goeforlaw.com*
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D., Suite 210
Irvine, CA 92614
Telephone: (949) 798-2460

Daren H. Lipinsky (SBN 190955)
*dlipinsky@riziolawfirm.com*
**RIZIO LIPINSKY HEITING, P.C.**
14771 Plaza Drive, Suite A
Tustin, CA  92780
Telephone: (714) 505-2468¶

Attorneys for Defendants
Brian Newberry and The Newberry
Family Trust

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Steven E. Bledsoe (SBN 157811)
*sbledsoe@larsonllp.com*
Daniel R. Lahana (SBN 305664)
*dlahana@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888

Attorneys for Defendants Glenn Russell, The Laura & Glenn Russell Revocable Trust, Eric Johnson, Twin Harbors LLLP, and Elysium Asset Management, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOBILE FORCE INVESTMENTS, LLC, an Arizona limited liability company, BRADLEY E. DAVIS, BRENT ROLAND, and GLENN ROLAND,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIAN NEWBERRY, THE NEWBERRY FAMILY TRUST, GLENN RUSSELL, THE LAURA & GLENN RUSSELL REVOCABLE TRUST, ERIC JOHNSON, TWIN HARBORS LLLP, a Nevada limited liability limited partnership, and ELYSIUM ASSET MANAGEMENT LLC, a California limited liability company,<br><br>Defendants. | Case No. 2:26–cv–02070–MEMF–DFM<br><br>**DEFENDANTS BRIAN NEWBERRY, THE NEWBERRY FAMILY TRUST, GLENN RUSSELL, THE LAURA & GLENN RUSSELL REVOCABLE TRUST, ERIC JOHNSON, TWIN HARBORS LLLP, AND ELYSIUM ASSET MANAGEMENT, LLC'S JOINT NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declaration of Steven Bledsoe and [Proposed] Order*]<br><br>Judge:  Hon. Maame Ewusi–Mensah Frimpong<br>Date:    May 28, 2026<br>Time:    10:00 a.m.<br>Crtrm.:  8B, 8th Floor,<br>           First Street Courthouse |

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on May 28, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8B of the First Street Courthouse, located at 350 West 1st Street, 8th Floor, Los Angeles, California 90012, Defendants Brian Newberry, The Newberry Family Trust, Glenn Russell, The Laura & Glenn Russell Revocable Trust, Eric Johnson, Twin Harbors LLLP, and Elysium Asset Management, LLC (collectively, "Defendants") will, and hereby do, move the Court for an order compelling Plaintiffs Bradley E. Davis, Brent Roland, and Glenn Roland (collectively, "Plaintiffs") to arbitrate their claims and to dismiss this case.[1]

This Motion is made on the following grounds. First, Section 11.9 of the Kadenwood, Inc. Shareholder Agreement — which Plaintiffs themselves attached to their Complaint as Exhibit 1 — states that each Shareholder "irrevocably and unconditionally consents to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." Because Plaintiffs have not challenged this delegation clause itself on any independent ground, the Court need not reach the merits of Plaintiffs' arbitrability objections. The only proper ruling is to dismiss this action and direct Plaintiffs to present their objections to the JAMS arbitrator.

Second, if the Court does reach the merits, Plaintiffs' argument still fails completely. Plaintiffs are trustees of trusts that were Shareholders in Kadenwood. The definition of "Shareholder" in Section 1.41 of the Kadenwood Shareholder

---

[1] Defendants have filed a request to dismiss Mobile Force Investments, LLC, from the JAMS arbitration, without prejudice. Mobile Force Investments, LLC, is therefore not a subject of this Motion.

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

Agreement includes both the Shareholder and the "legal representatives" of the Shareholder. Here, Plaintiffs Bradley E. Davis, Brent Roland, and Glenn Roland's own signed writings confirm that they were Shareholders in Kadenwood and that they were parties to the company's Shareholder Agreement. Because Plaintiffs are admittedly parties to the Kadenwood Shareholder Agreement, which contains a mandatory JAMS arbitration clause, Plaintiffs are subject to JAMS arbitration.

Third, the termination of the Shareholder Agreement that Plaintiffs invoke in their attempt to avoid arbitration is expressly arbitrable under Section 11.9's own text and is independently preserved by the Shareholder Agreement's survival and severability provisions. Plaintiffs should be compelled to arbitration for these reasons as well.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declaration of Steven E. Bledsoe and supporting exhibits, all records on file with this Court, and such other further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

This Motion is made following the telephonic conference of counsel under Local Rule 7–3 and the Court's Standing Order, which took place on March 23, 2026. The following counsel participated in the telephone conference: (a) Steven Bledsoe and Daniel Lahana on behalf of Defendants Glenn Russell, The Laura & Glenn Russell Revocable Trust, Eric Johnson, Twin Harbors LLLP, and Elysium Asset Management, LLC, (b) Ronald Hodges and Daren Lipinsky on behalf of Defendants Brian Newberry and The Newberry Family Trust, and (c) Marisol Monk, Hanah Makinde, Cody Jess, and Natalya Ter–Grigoryan on behalf of Plaintiffs Mobile Force Investments, LLC, Bradley E. Davis, Brent Roland, and Glenn Roland.

During the meet–and–confer conference, counsel for the parties discussed the grounds on which Defendants intended to rely in moving to compel arbitration and

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

to dismiss the case, as well as the grounds on which Plaintiffs intend to oppose the motion. The parties were ultimately unable to resolve their disputes.

Dated: April 9, 2026        **GOE FORSYTHE & HODGES LLP**

By: _____

Ronald S. Hodges
Ashley N. Kinder
Taylor DeRosa
Attorneys for Defendants
Brian Newberry and The Newberry Family Trust

Dated: April 9, 2026        **RIZIO LIPINSKY LAW FIRM, P.C.**

By: _____

Daren H. Lipinsky
Attorneys for Defendants
Brian Newberry and The Newberry Family Trust

Dated: April 9, 2026        **LARSON LLP**

By: _____/s/ *Steven E. Bledsoe*_____

Stephen G. Larson
Steven E. Bledsoe
Daniel R. Lahana
Attorneys for Defendants
Glenn Russell, The Laura & Glenn Russell Revocable Trust, Eric Johnson, Twin Harbors LLLP, and Elysium Asset Management, LLC

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................8

II.     BACKGROUND ....................................................................................9

    A.   The Subscription Agreement has an Independent Binding Arbitration Clause for Holders of Series B Shares. ..............................10

    B.   Plaintiffs Were Parties to Kadenwood's Shareholder Agreement........11

    C.   This Case Arises From Plaintiffs Alleged Fraudulent Transfer of Kadenwood's Assets to a New Company They Established to Continue the Business of Kadenwood. ...................................................12

III.    ARGUMENT ........................................................................................13

    A.   Legal Standard for Motion to Compel Arbitration ..............................13

        1.   The Delegation Clause Limits This Court's Authority to Decide Arbitrability. .................................................................14

    B.   Each Plaintiff Is Bound to Arbitrate. ...................................................15

        1.   Plaintiffs' Own Written Admissions Establish Party Status........................................................................................15

        2.   The Subscription Agreement and Joinder Mechanism Independently Bound Each Plaintiff...........................................16

        3.   The Individual Plaintiffs Were Properly Named in Their Individual and Trustee Capacities, and the Trustee Is the Proper and Required Party Under Applicable Law. ...................17

        4.   Plaintiffs Are Equitably Estopped from Repudiating the Arbitration Clause.................................................................19

    C.   Plaintiffs' Anticipated Termination Defense Fails on Four Independent Grounds. .........................................................................19

        1.   Section 11.9 Makes the Termination Question Itself Arbitrable. ...............................................................................20

        2.   Section 9.2 Was Not Validly Triggered. ...................................20

        3.   Sections 11.4 and 11.6 of the Shareholder Agreement Expressly Preserve the Arbitration Obligation Through Dissolution and Insolvency. .......................................................21

        4.   Pre–Termination Claims Independently Require Arbitration........................................................................................21

IV.     CONCLUSION .....................................................................................22

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ...................................................................................19

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...................................................................................15

*Berkery v. Cross Country Bank*,
  256 F. Supp. 2d 359 (E.D. Pa. 2003)..........................................................22

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ...................................................................................20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)....................................................................13

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...................................................................................14

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014)......................................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) .....................................................................................14

*Herrera v. Cathay Pac. Airways Ltd.*,
  104 F.4th 702 (9th Cir. 2024)....................................................................19

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) .........................................................................13, 14, 15

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020)......................................................................13

**California Cases**

*Aanderud v. Superior Ct.*,
  13 Cal. App. 5th 880 (2017)........................................................................14

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

*Galdjie v. Darwish*,
    113 Cal. App. 4th 1331 (2003)................................................................................18

*JSM Tuscany, LLC v. Superior Court* (2011)
    193 Cal. App. 4th 1222 (2011)..............................................................................19

*Metalclad Corp. v. Ventana Environmental Organizational Partnership*
    109 Cal .App. 4th 1705, 1713–14 (2003)..............................................................19

*Oxford Preparatory Acad. v. Edlighten Learning Sols.*,
    34 Cal. App. 5th 605 (2019)..................................................................................22

**California Statutes**

Cal. Prob. Code
    § 16249 ..................................................................................................................18

**Other State Statutes**

Ariz. Rev. Stat.
    § 14–10816(24)......................................................................................................17
    § 14–11012(A)......................................................................................................17

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

## I.      INTRODUCTION

Plaintiffs ask this Court to enjoin a pending JAMS arbitration involving $50 million in claims arising from a scheme in which Plaintiffs stripped Kadenwood, Inc. of substantially all of its assets nine days after a $6.24 million arbitration award was issued against that company — and then used the very dissolution they manufactured to argue they are free from the arbitration obligation they irrevocably undertook as shareholders. The Court need not reach the merits of that request, which should be denied in any event.

First, Section 11.9 of the Kadenwood, Inc. Shareholder Agreement — which Plaintiffs themselves attached to their Complaint as Exhibit 1 — states that each Shareholder "irrevocably and unconditionally consents to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 11.9.) That is a textbook delegation clause. It covers both objections Plaintiffs raise in this action. Because Plaintiffs have not challenged the delegation clause itself on any independent ground, this Court need not reach the merits of Plaintiffs' arbitrability objections. Instead, the Court should dismiss this action and direct Plaintiffs to present their objections to the JAMS arbitrator.

Second, if the Court does reach the merits, Plaintiffs' motion still fails. Plaintiffs' own signed writings confirm — in their own signatures and in their own stated capacities — that they were Shareholders in Kadenwood and that they were parties to the company's Shareholder Agreement. The definition of "Shareholder" in the Shareholder Agreement includes both the Shareholder and their "legal representatives." (*Id.* at § 1.41.) Here, Plaintiffs Bradley E. Davis, Brent Roland, and Glenn Roland each signed the February 28, 2023 Written Consent in Lieu of the 2023 Annual Meeting of the Stockholders of Kadenwood, Inc. ("Stockholder

8

Consent") stating that they were stockholders and parties to the Shareholder Agreement. (Bledsoe Decl. ¶ 12, Ex. F, Stockholder Consent at TD 600–01, 604, 606–07.) Because Plaintiffs are admittedly parties to the Kadenwood Shareholder Agreement, which contains a mandatory arbitration clause, this case should be dismissed and Plaintiffs should be compelled to arbitration.

Third, the termination of the Shareholder Agreement that Plaintiffs invoke in their attempt to avoid arbitration is expressly arbitrable under Section 11.9's own text and is independently preserved by the Shareholder Agreement's survival and severability provisions. (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement §§ 9.2, 11.4(f), and 11.6.) Plaintiffs should be compelled to arbitration for these reasons as well.

Finally, if the Court reaches the merits and considers disputed factual questions about Plaintiffs' party status and the alleged termination, Defendants are entitled to targeted discovery before any injunction may issue.

## II.   BACKGROUND

Plaintiffs are former controlling shareholders of Kadenwood, Inc. Bradley Davis is the Trustee and legal representative of the Bradley E. Davis Trust dated January 1, 2014 which held 3,391,817 Series B shares in Kadenwood. Brent Roland is the Trustee and legal representative of the Roland Family Trust which held 2,688,300 Series B shares in Kadenwood. Glenn Roland is the Trustee and legal representative of the Roland Family Support Trust which held 714,367 Series B shares in Kadenwood. (See Bledsoe Decl. ¶¶ 12–13, Ex. F at TD 600, 604, 606-07.)

Kadenwood lost its prior JAMS arbitration with Defendants. In response to that loss, Defendants allege that Plaintiffs fraudulently transferred the assets of Kadenwood to a new entity they formed and controlled and simply continued Kadenwood's operations under a new name. The facts underlying the follow–on arbitration proceedings are set forth in Defendants' Amended Demand for Arbitration ("Amended Demand") filed with JAMS on February 17, 2026. (Bledsoe

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

Decl. ¶ 15, Ex. H.) Defendants filed their JAMS arbitration against Bradley Davis, Brent Roland and Glenn Roland in their individual capacities and as trustees of their respective trusts. (*See id*. ¶¶ 5, 7–8.) They are subject to the binding arbitration clause in the Shareholder Agreement in both capacities as the definition of "Shareholder" includes both the Shareholder and their "legal representatives." (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 1.41.)

The Arbitration Clause and Delegation Provision of Section 11.9 of Kadenwood's Shareholder Agreement require all shareholders to submit any "dispute or disagreement . . . arising out of or in connection with any term or provision of this Agreement, the subject matter hereof, or the interpretation or enforcement hereof" to final and binding JAMS arbitration in Orange County, California. (Bledsoe Decl. ¶ 5; Ex. A, Shareholder Agreement § 11.9.) Section 11.9 further provides that each Shareholder "irrevocably and unconditionally consents to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate," and further consents to the jurisdiction of California courts to enforce that clause. (*Id*.) The arbitration clause expressly designates JAMS Comprehensive Arbitration Rules and Procedures as the governing procedural rules. (*Id*.)

A.     **The Subscription Agreement has an Independent Binding Arbitration Clause for Holders of Series B Shares.**

Section 9 of each Kadenwood Subscription Agreement — required of every Series B shareholder as a condition of acquiring shares — contains an independent, standalone JAMS arbitration clause with the same terms, including the same delegation of scope and applicability to the arbitrator. (Bledsoe Decl. ¶¶ 6–7; Ex. B, Subscription Agreement § 9.) The Subscription Agreement also expressly required each Series B investor to "agree to be bound by all the terms and provisions of the

Shareholder Agreement of the Company." (*Id*.) The subscription instructions required delivery of "a signed Joinder Agreement to the Shareholder Agreement" as a mandatory condition of acquiring shares. (*Id*.) Plaintiffs Bradley Davis, Brent Roland, and Glenn Roland were trustees of trusts that were holders of Series B shares. (Bledsoe Decl. ¶¶ 8–9; Ex. C, Capitalization ("Cap") Table.)

### B.    Plaintiffs Were Parties to Kadenwood's Shareholder Agreement.

The February 5, 2023 Capitalization Table confirms that Plaintiffs were trustees of trusts that were shareholders of Kadenwood. (Bledsoe Decl. ¶¶ 8–9; Ex. C.) The trusts that Plaintiffs are trustees for appear in alphabetical order on the Kadenwood Capitalization Table as (1) Roland Family Trust, (2) The Bradley E. Davis Trust UTA dated 1–1–24, and (3) The Roland Family Support Trust. (*Id*.)

Robert Krakauer, Kadenwood's former CFO, and Douglas Weekes, Kadenwood's former COO, both testified under oath that every shareholder of Kadenwood was required to sign a Shareholder Agreement or a Joinder to the Shareholder Agreement. (Bledsoe Decl. ¶¶ 10–11; Ex. D (Krakauer Dep. 46:20–47:7 (Aug. 9, 2023)), and Ex. E (Weekes Dep. 264:13–17(June 13, 2023.)

Moreover, the document Plaintiffs attempt to rely on to avoid the JAMS arbitration — WRITTEN CONSENT IN LIEU OF THE 2023 ANNUAL MEETING OF THE STOCKHOLDERS OF KADENWOOD, INC. ("Stockholder Consent") — confirms that each Plaintiff was a party to the Kadenwood Shareholder Agreement.

The February 28, 2023 Stockholder Consent provides:

**Termination of Shareholder Agreement**

WHEREAS, the Company and its stockholders are parties to that certain Kadenwood Inc. Shareholder Agreement dated as of July 7, 2021, as amended by an Amendment No. 1 dated March 31, 2022 ("Shareholder Agreement");

(Bledsoe Decl. ¶¶ 12 Ex. F at TD 600.)

WHEREAS, the undersigned stockholders, constituting the Requisite

11

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

Holders, desire to terminate the Shareholder Agreement;

(*Id*.)

Plaintiffs Bradley E. Davis and Brent Roland signed this Stockholder Consent to terminate the Shareholder Agreement as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)" on February 28, 2023. (*Id*. Ex. F at TD 599–604.) Plaintiffs Bradley E. Davis, Brent Roland and Glenn Roland also separately signed the Stockholder Consent in their capacity as "Series B Holders (as defined in the Shareholder Agreement)." (*Id.* Ex. F at TD 606–07.) Plaintiffs Bradley E. Davis, Brent Roland, and Glenn Roland have thus directly admitted, in writing, that they were parties to the Shareholder Agreement, which contains a binding arbitration clause. (*Id*. Ex. F at TD 600.)

**C.    <u>This Case Arises From Plaintiffs Alleged Fraudulent Transfer of Kadenwood's Assets to a New Company They Established to Continue the Business of Kadenwood.</u>**

The underlying demand for arbitration alleges that nine days after a $6.24 million Partial Award was issued in Defendants' prior JAMS arbitration against Kadenwood, Plaintiffs declared a false default on their insider loans to Kadenwood, which had been structured without disclosure to Defendants while the prior arbitration was ongoing. (See Bledsoe Decl. ¶ 15, Ex. H, Amended Demand.) Robert Krakauer, Kadenwood's former CFO, testified in the prior arbitration that the Plaintiff lenders received accurate disclosures about Kadenwood's financial situation and the arbitration risks — directly refuting Plaintiffs' stated basis for the default declaration. (Bledsoe Decl. ¶ 10, Ex. D (Krakauer 8/9/23 Dep. at 23:16–24:9; 18:14–19).)

Defendants allege that, based on the false default, Plaintiffs seized Kadenwood's assets through the Article 9 Sale on February 28, 2023, terminated the Shareholder Agreement the same day without notice to Defendants, and voted to

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

dissolve Kadenwood on March 15, 2023 — again without notice. (See *id.* Ex. H (Amended Demand).) The dissolution resolution itself recites: "RESOLVED, that the Company is insolvent and that the liquidation of its assets . . . is hereby authorized and approved" — a declaration that was the direct product of Plaintiffs' own asset seizure the preceding day. (*Id.*) Kadenwood never filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. (Bledsoe Decl. ¶ 16.) The first written notice to Defendants of any of these events was the March 24, 2023 notice from Bryan Perkinson — over three weeks after the fact. As such, Defendants allege that Plaintiffs orchestrated the manufactured default they now attempt to rely on to avoid their irrevocable and unconditional assent to JAMS jurisdiction. (See *id.* Ex. H, Amended Demand.)

## III.    ARGUMENT

### A.    Legal Standard for Motion to Compel Arbitration

The FAA limits the role of the judiciary "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court answers both questions in the affirmative, it must "enforce the arbitration agreement in accordance with its terms." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) (quoting *Chiron Corp.*, 207 F.3d at 1130). And "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (internal quotation omitted)

The presence of a delegation clause further limits the issues that a court may decide. A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). The FAA

"allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019).

The Court has held that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Center*, 561 U.S. at 70. In other words, a delegation clause is essentially a mini-arbitration agreement, nested within a larger one. "[T]he FAA operates on this additional arbitration agreement just as it does on any other." *Id.*

### 1. The Delegation Clause Limits This Court's Authority to Decide Arbitrability.

The threshold question is who decides arbitrability: the Court or the arbitrator. Under the FAA, parties may delegate threshold arbitrability questions — including whether the agreement exists, whether a party is bound, and whether the agreement has been terminated — to the arbitrator by clear and unmistakable agreement. *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). Once a valid delegation clause exists, a court does not have authority to decide arbitrability unless the resisting party specifically challenges the delegation clause itself on independent grounds — a challenge to the broader agreement is legally insufficient. *Rent–A–Center*, 561 U.S. at 71–72. California applies the same principle. *Aanderud v. Superior Ct.*,13 Cal. App. 5th 880, 891-92 (2017).

Section 11.9 of the Shareholder Agreement is unambiguous. Each Shareholder "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 11.9.) This self–referential delegation clause directly reaches both of Plaintiffs' objections.

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

Plaintiffs' first objection — that they are not parties to the Shareholder Agreement (Compl. ¶¶ 27–30) — is a challenge to the "scope or applicability" of Section 11.9 to them. Plaintiffs' second objection — that the Shareholder Agreement was terminated (Compl. ¶¶ 5, 31–34) — is a dispute about the Agreement's "termination." Both are expressly delegated. (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 11.9; ¶¶ 6–7, Ex. B, Subscription Agreement § 9.)

Plaintiffs have not specifically challenged the delegation clause in Section 11.9 on any independent ground. Their Complaint attacks the Shareholder Agreement wholesale. Under *Rent–A–Center*, that is precisely the type of attack a delegation clause deflects: "unless [the resisting party] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent–A–Center*, 561 U.S. at 72.

Section 11.9 of the Shareholder Agreement's incorporation of the JAMS Comprehensive Arbitration Rules provides a second, independent basis for delegation. (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 11.9.) JAMS Comprehensive Rule 11(b) grants the arbitrator independent authority to hear and determine all challenges to jurisdiction and arbitrability, including "who are proper Parties to the Arbitration."

Because Plaintiffs have not challenged the delegation clause on independent grounds, this Court cannot reach the merits of Plaintiffs' arbitrability objections at all. The Court should dismiss or stay this action under 9 U.S.C. § 3 and direct Plaintiffs to present their objections to the JAMS arbitrator as they contractually agreed. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

**B.    Each Plaintiff Is Bound to Arbitrate.**

Should the Court reach the merits, the record allows for only one conclusion.

**1.    Plaintiffs' Own Written Admissions Establish Party Status.**

The strongest evidence in this record is Plaintiffs' own signatures. On

15

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

February 28, 2023, Plaintiffs Bradley Davis, Brent Roland, and Glenn Roland each signed the Stockholder Consent, which explicitly states that they are stockholders and acknowledges on its face that the Company "and its stockholders are parties to that certain Kadenwood Inc. Shareholder Agreement." (Bledsoe Decl. ¶¶ 12–13, Ex. F, Stockholder Consent at TD 600.) They did not sign as neutral third parties. Each signed as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)." (*Id*. at TD 599–604.) Bradley Davis, Brent Roland, and Glenn Roland also separately signed in their capacity as "Series B Holders (as defined in the Shareholder Agreement)." (*Id*. at TD 606–07.) They signed beside the specific number of shares they were voting — 3,391,817 for the Bradley E. Davis Trust: 2,688,300 for the Roland Family Trust; and 714,367 for the Roland Family Support Trust. (*Id*. at TD 604, 606–07.)

As such, Plaintiffs' assertion in this Complaint that they were "never" parties to the Shareholder Agreement (Compl. ¶¶ 27–30) is irreconcilable with a document in which they expressly acknowledged being stockholder parties to the Shareholder Agreement.

### 2. The Subscription Agreement and Joinder Mechanism Independently Bound Each Plaintiff.

Section 2.2 of the Shareholder Agreement required every new shareholder to "execute[] and agree[] to be bound by the terms of this Agreement." (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 2.2.) The Subscription Agreement required each Series B investor to "agree to be bound by all the terms and provisions of the Shareholder Agreement" and to deliver a signed Joinder Agreement as a mandatory closing condition. (*Id*. ¶¶ 6–7, Ex. B, Subscription Agreement at KW2_103089.)

The February 5, 2023 Capitalization Table lists each of the relevant trusts for which Plaintiffs acted as trustees as a Kadenwood shareholder holding Series B Preferred Shares — the class that independently required execution of Subscription and Joinder Agreements as a condition of acquiring shares. (Bledsoe Decl. ¶¶ 8–9,

Ex. C, Cap Table.) Kadenwood's CFO, Robert Krakauer, confirmed under oath that every Kadenwood shareholder was required to sign a Shareholder Agreement or a Joinder. (*Id*. ¶ 10, Ex. D, Krakauer Dep. 46:20–47:7.) Kadenwood's COO, Douglas Weekes, provided identical testimony. (*Id*. ¶ 11, Ex. E, Weekes Dep. 264:13–17.)

### 3.    <u>The Individual Plaintiffs Were Properly Named in Their Individual and Trustee Capacities, and the Trustee Is the Proper and Required Party Under Applicable Law.</u>

Defendants' Amended Demand named Bradley E. Davis, Brent Roland, and Glenn Roland expressly in their individual and trustee capacities: Davis as "an individual and as Trustee of the Bradley E. Davis Trust dated January 1, 2014"; Brent Roland as "an individual and as Trustee of The Roland Family Trust"; and Glenn Roland as "an individual and as Trustee of The Roland Family Support Trust." (Bledsoe Decl. ¶ 15, Ex. H, Amended Demand at 2.) That dual designation is legally correct and necessary under each applicable jurisdiction's laws.

The trusts at issue are Arizona trusts — the Bradley E. Davis Trust is administered by a Chandler, Arizona trustee, and the Roland Family Trust and Roland Family Support Trust are administered by Paradise Valley, Arizona trustees. (*Id*. at ¶¶ 5, 7, 8) Under the Arizona Trust Code, a trustee holds legal title to trust property in the trustee's fiduciary capacity and is both authorized and required to sue and be sued in that capacity with respect to trust assets and obligations arising from the administration of the trust. *See* Ariz. Rev. Stat. § 14–11012(A) (trustee may sue and be sued in the trustee's fiduciary capacity); Ariz. Rev. Stat. § 14–10816(24) (trustee has power to prosecute or defend actions as trustee for protection of trust assets). Because the Bradley E. Davis Trust, the Roland Family Trust, and the Roland Family Support Trust held Kadenwood shares (Bledsoe Decl. ¶¶ 8–9, Cap Table), signed the Stockholder Consent, and exercised voting rights in those trustee capacities (*id*. ¶¶ 12–13, Ex. F, Stockholder Consent at TD 599–607), naming Davis, Brent Roland, and Glenn Roland in their trustee capacities was not

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

merely permissible — it was required to bind the trust assets and ensure complete relief.

Under California law, a trustee is vested with legal title and exclusive management authority over trust property and is the real party in interest in all proceedings affecting trust assets. Cal. Prob. Code § 16249 (trustee has power to prosecute or defend actions for the protection of trust property); *Galdjie v. Darwish,* 113 Cal. App. 4th 1331, 1344 (2003) (trustee is the proper party plaintiff or defendant in actions involving trust property; beneficiaries lack standing to sue on trust's behalf absent a trustee's wrongful refusal).

Finally, the Shareholder Agreement itself expressly contemplates and addresses the continued obligations of trustee–shareholders. Section 1.46(e) specifically defines a "Trigger Event" — the mechanism by which shareholder obligations can be modified — as arising upon "the termination of the trust but not merely the substitution of a new trustee," expressly carving out trustee succession as a non–event for purposes of the Agreement's obligations. (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 1.46(e).) Read together with Section 11.4(f)'s survival clause — which preserves the Agreement's obligations through "dissolution, or cessation of existence of a Shareholder" — the Agreement makes plain that trustee–shareholders carry their arbitration obligations continuously regardless of any administrative changes to the trustee's identity.

Since each Plaintiff signed the Stockholder Consent and voted their trusts' shares in their express capacities as trustees and as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)" (Bledsoe Decl. ¶¶ 12–13, Ex. F, Stockholder Consent at TD 599–604), each is properly subject to arbitration both individually and in those continuing fiduciary capacities. Naming them in both capacities is not duplicative — it is essential to ensuring that any award entered by the JAMS arbitrator is enforceable against both the individual Plaintiffs personally and the trust assets over which they exercise fiduciary control, and that

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

Plaintiffs cannot seek to limit their exposure by arguing post–award that the judgment runs only against the individual and not the trust, or only against the trust and not the individual.

**4.      Plaintiffs Are Equitably Estopped from Repudiating the Arbitration Clause.**

Even if any Plaintiff could manufacture a colorable dispute about formal signatory status — which they cannot — they are equitably estopped from repudiating the arbitration clause. Under the "direct benefits" theory, a party who exercises rights under or accepts benefits from a contract containing an arbitration clause cannot simultaneously disclaim that clause. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 710 (9th Cir. 2024); *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal. App. 4th 1222, 1237 (2011); *Metalclad Corp. v. Ventana Environmental Organizational Partnership* 109 Cal .App. 4th 1705, 1713–14 (2003).

On February 28, 2023, in their acknowledged capacities as Controlling Shareholders and Series B Holders under the Shareholder Agreement, Plaintiffs voted their shares to terminate it and simultaneously seized substantially all of Kadenwood's assets through the Article 9 sale. (Bledsoe Decl. ¶¶ 12–13, Ex. F, Stockholder Consent at TD 599–607.) They transferred those assets to B&B AZ Holdings, LLC and received membership interests in that entity. (See Bledsoe Decl. ¶ 15, Ex. H, Amended Demand.) Having accepted the economic fruits of those shareholder voting rights, Plaintiffs cannot now disclaim the arbitration obligation that was a non–negotiable condition of their shareholder status.

**C.      Plaintiffs' Anticipated Termination Defense Fails on Four Independent Grounds.**

Plaintiffs are likely to allege that the Shareholder Agreement "terminated years ago when Kadenwood became insolvent" under Section 9.2. (Compl. ¶¶ 5, 31–34.) This argument fails on four independent and separately dispositive grounds.

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

**1.    Section 11.9 Makes the Termination Question Itself Arbitrable.**

The termination defense is self–defeating as a basis for an injunction. Section 11.9 expressly provides for arbitration of disputes about the Agreement's own "breach, termination, enforcement, interpretation or validity." (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 11.9.) The parties specifically agreed that whether the Agreement was validly terminated is itself arbitrable. A party cannot invoke the very termination that Defendants are challenging in the pending arbitration as grounds for refusing to submit to that arbitration. Under the FAA's severability doctrine, an arbitration clause survives challenges to the validity or continued existence of the broader contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006).

**2.    Section 9.2 Was Not Validly Triggered.**

Section 9.2 terminates the Agreement upon "[t]he Company's dissolution, filing of a petition in bankruptcy under Chapter 7 of the Bankruptcy Code, or insolvency of the Company." (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 9.2.) None of the three contemplated triggers was validly satisfied.

There was no Chapter 7 Bankruptcy. Kadenwood has never filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. (*Id*. at ¶ 16.) This is the most specific and unambiguous trigger Section 9.2 contemplates — a formal legal proceeding under a specific federal statute — and it did not occur. Rather, this was a manufactured insolvency.  The "insolvency" Plaintiffs invoke was not a naturally occurring financial collapse. The dissolution resolution Plaintiffs signed on March 15, 2023 declares that Kadenwood "is insolvent" — a declaration made fifteen days after Plaintiffs had already stripped Kadenwood of substantially all of its assets through the February 28, 2023 Article 9 sale. (Bledsoe Decl. ¶ 14, Ex. G, Stockholder Consent — Liquidation and Dissolution; ¶ 15, Ex. H, Amended Demand and Ex. O thereto.) Krakauer himself testified under oath that the

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

Respondent lenders received complete and accurate disclosures about Kadenwood's financial situation and the arbitration risks — directly refuting the stated basis for the default declaration. (Bledsoe Decl. ¶ 10, Ex. D, Krakauer Dep. at 23:16–24:9.) A party may not manufacture the conditions that trigger a contractual termination clause and then invoke that termination as a defense against liability for the very conduct that caused it.

This was also a manufactured dissolution. Plaintiffs voted to dissolve Kadenwood on March 15, 2023. (Bledsoe Decl. ¶ 14, Ex. G, Stockholder Consent — Liquidation and Dissolution.) That vote came after they had already seized the assets and after they had already signed the Stockholder Consent as shareholders to terminate the Agreement. (*Id.* at ¶ 15, Ex. H, Amended Demand.) Permitting Section 9.2 to be weaponized in this manner would allow insiders to nullify their arbitration obligations at will by stripping the company of its assets and declaring it insolvent.

**3.      Sections 11.4 and 11.6 of the Shareholder Agreement Expressly Preserve the Arbitration Obligation Through Dissolution and Insolvency.**

Even accepting Plaintiffs' characterization of events — which Defendants expressly dispute — Section 11.6 of the Shareholder Agreement provides additional reinforcement: "It is intended that each paragraph of this Agreement shall be viewed as separate and divisible. In the event that any paragraph shall be held to be invalid, the remaining paragraphs shall continue to be in full force and effect." (Bledsoe Decl. ¶ 5, Ex. A, Shareholder Agreement § 11.6.) Section 11.9 is a separate, independently enforceable provision. Even if Section 9.2 could affect some provisions, Section 11.9 survives under Section 11.6's plain terms.

**4.      Pre–Termination Claims Independently Require Arbitration.**

Even accepting a February 28, 2023 termination date for purposes of argument — which Defendants refute — claims arising before that date

21

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

independently require arbitration. The September 23, 2022 Loan Agreement, the November 17, 2022 Loan and Intercreditor Agreement appointing Bradley E. Davis as agent for all insider lenders, the false default declaration on February 1, 2023, and the Notice of Disposition of Collateral on February 15, 2023 all occurred while the Shareholder Agreement was unquestionably in full force. (See Bledsoe Decl. ¶ 15, Ex. H, Amended Demand and Exs. A–H thereto.) An arbitration clause survives termination of the underlying agreement as to claims that arose during the term. *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 369 (E.D. Pa. 2003); *Oxford Preparatory Acad. v. Edlighten Learning Sols.*, 34 Cal. App. 5th 605, 610 (2019). These pre–termination claims require arbitration regardless of any alleged effect on the Agreement's other provisions on February 28, 2023.

## IV.    CONCLUSION

For the above reasons, the Court should grant Defendants' Motion to Compel Arbitration and in the meantime, stay or dismiss Plaintiffs' complaint.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

22

Dated: April 9, 2026            **GOE FORSYTHE & HODGES LLP**

By: _____
        Ronald S. Hodges
        Ashley N. Kinder
        Taylor DeRosa
Attorneys for Defendants
Brian Newberry and The Newberry Family
Trust

Dated: April 9, 2026            **RIZIO LIPINSKY LAW FIRM, P.C.**

By: _____
        Daren H. Lipinsky
Attorneys for Defendants
Brian Newberry and The Newberry Family
Trust

Dated:  April 9, 2026           **LARSON LLP**

By: _____/s/ Steven E. Bledsoe_____
        Stephen G. Larson
        Steven E. Bledsoe
        Daniel R. Lahana
Attorneys for Defendants
Glenn Russell, The Laura & Glenn Russell
Revocable Trust, Eric Johnson, Twin Harbors
LLLP, and Elysium Asset Management, LLC

23

**<u>CERTIFICATE OF COMPLIANCE</u>**

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,533 words, which complies with the word limit of L.R. 11–6.1.

Dated: April 9, 2026                              */s/ Steven E. Bledsoe*
                                                      Steven E. Bledsoe

DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE