# EXHIBIT H

Ronald S. Hodges (SBN 150586)
Ashley N. Kinder (SBN 363008)
Taylor DeRosa (SBN 319853)
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D., Suite 210
Irvine, CA 92614
Telephone: (949) 798-2460
Email: *rhodges@goeforlaw.com*
         *akinder@goeforlaw.com*
         *tderosa@goeforlaw.com*

Daren H. Lipinsky (SBN 190955)
**RIZIO LIPINSKY HEITING, P.C.**
14771 Plaza Drive, Suite A
Tustin, CA  92780
Telephone: (714) 505-2468
Email: *dlipinsky@riziolawfirm.com*

Attorneys for Claimants
Brian Newberry and The Newberry Family
Trust

Stephen G. Larson (SBN 145225)
Steven E. Bledsoe (SBN 157811)
Daniel R. Lahana (SBN 305664)
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Email: *slarson@larsonllp.com*
         *sbledsoe@larsonllp.com*
         *dlahana@larsonllp.com*

Attorneys for Claimants
Glenn Russell, The Laura & Glenn Russell
Revocable Trust, Eric Johnson, Twin Harbors
LLLP, and Elysium Asset Management, LLC

**JAMS ARBITRATION**

**ORANGE COUNTY, CALIFORNIA**

| | |
|---|---|
| BRIAN NEWBERRY, THE NEWBERRY FAMILY TRUST, GLENN RUSSELL, THE LAURA AND GLENN RUSSELL REVOCABLE TRUST, ERIC JOHNSON, TWIN HARBORS LLLP, and ELYSIUM ASSET MANAGEMENT, LLC, a California limited liability corporation,<br><br>           Claimants,<br><br>vs.<br><br>MOBILE FORCE INVESTMENTS, LLC, an Arizona limited liability company, BRADLEY E. DAVIS, an individual, BRENT ROLAND, an individual, GLENN ROLAND, an individual, COACH INVESTMENTS, LLC, a Delaware limited liability company, FIRST AMERICAN TRUST OF NEVADA, LLC, a Nevada limited liability company, ROBERT KRAKAUER, an individual, JENNIFER DICKENS, an individual, R&R AZ INVESTMENTS, LLC, a Delaware limited liability company, and DOES 1-20, inclusive,<br><br>           Respondents. | JAMS Case No.  5200003013<br><br>***AMENDED* DEMAND FOR ARBITRATION FOR:**<br>1) **BREACH OF FIDUCIARY DUTY;**<br>2) **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br>3) **CIVIL CONSPIRACY;**<br>4) **UNJUST ENRICHMENT; and**<br>5) **DECLARATORY RELIEF** |

AMENDED DEMAND FOR ARBITRATION

COMES NOW Claimants Brian Newberry, The Newberry Family Trust (collectively "Newberry"), Glenn Russell, The Laura & Glenn Russell Revocable Trust, Eric Johnson, Twin Harbors LLLP, and Elysium Asset Management, LLC (collectively "Elysium Parties") (all collectively "Claimants"), who complain and allege against Respondents Mobile Force Investments, LLC, Bradley E. Davis (as an individual and as Trustee of the Bradley E. Davis Trust dated January 1, 2014), Brent Roland (as an individual and as Trustee of The Roland Family Trust), Glenn Roland (as an individual and as Trustee of The Roland Family Support Trust), Coach Investments, LLC, First American Trust of Nevada, LLC, Robert Krakauer, Jennifer Dickens, and R&R AZ Investments, LLC (all collectively "Respondents"), and DOES 1-20 inclusive as follows:

**PARTIES**

1.      Claimant Brian Newberry is, and at all times relevant herein was, an individual residing in Orange County, California, and is a Trustee of The Newberry Family Trust.  Newberry was one of the three original founders of Kadenwood, Inc., is a former board member of Kadenwood, was a major shareholder in Kadenwood, and is a judgment creditor of Kadenwood.

2.      Claimant Glenn Russell is, and at all times relevant herein was, an individual residing in Orange County, California, and is a Trustee of Claimant The Laura & Glenn Russell Revocable Trust, dated June 23, 1997.  Russell is a former board member of Kadenwood, was a major shareholder in Kadenwood, and is a judgment creditor of Kadenwood.

3.      Claimant Eric Johnson is, and at all times relevant herein was, an individual residing in Orange County, California, and is the Managing Member of the General Partner of Claimant Twin Harbors, LLLP, a Nevada limited liability limited partnership.  Johnson is a former employee of Kadenwood, was a major shareholder in Kadenwood, and is a judgment creditor of Kadenwood.

4.      Claimant Elysium Asset Management, LLC ("Elysium") is, and at all times relevant herein was, a limited liability company organized under the laws of the State of California, doing business in the State of California.  Elysium was a shareholder in Kadenwood, and is a judgment creditor of Kadenwood.

5.      Claimants are informed and believe, and on that basis allege that Respondent Bradley E. Davis is, and at all times relevant herein was, an individual residing in Maricopa County, Arizona, and is Trustee of the Bradley E. Davis Trust dated January 1, 2014, with an address of 573 West Canyon Way, Chandler, AZ, 85248.  The Bradley E. Davis Trust was a shareholder of Kadenwood and Bradley E. Davis is a former board member of Kadenwood.

6.      Claimants are informed and believe, and on that basis allege, that Bradley E. Davis is the managing member of Respondent Mobile Force Investments, LLC, an Arizona limited liability company with its principal place of business in Chandler, Arizona.  Mobile Force Investments, LLC was a shareholder of Kadenwood.

7.      Claimants are informed and believe, and on that basis allege that Respondent Brent Roland is, and at all times relevant herein was, an individual residing in Maricopa County, Arizona, and is a Trustee of The Roland Family Trust, with an address of 7605 North Shadow Mountain Road, Paradise Valley, AZ 85253.  The Roland Family Trust was a shareholder in Kadenwood and Brent Roland is a former board member of Kadenwood.

8.      Claimants are informed and believe, and on that basis allege that Respondent Glenn Roland is Trustee of The Roland Family Support Trust, a trust for the benefit of the family of Brent Roland, with an address of 8533 North 50th Place, Paradise Valley, AZ 85253.  The Roland Family Support Trust was a shareholder in Kadenwood.

9.      Claimants are informed and believe, and on that basis allege that Respondent Coach Investments, LLC is a Delaware limited liability company with its principal place of business in Scottsdale, Arizona.  Coach Investments, LLC was a shareholder in Kadenwood.

10.      Claimants are informed and believe, and on that basis allege that Respondent First American Trust of Nevada, LLC, is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada, and is Trustee of The Bosco Trust and the Malcolm Trust.  The Bosco Trust and the Malcolm Trust were shareholders in Kadenwood.

11.      Claimants are informed and believe, and on that basis allege that Respondent Robert Krakauer is, and at all times relevant herein was, an individual residing in Maricopa County, Arizona.  Krakauer was a shareholder in Kadenwood and is the former Chief Financial

3

AMENDED DEMAND FOR ARBITRATION

Officer of Kadenwood.

12.    Claimants are informed and believe, and on that basis allege that Respondent Jennifer Dickens was at relevant times an individual residing in Orange County, California, and currently resides in Williamson County, Tennessee.  Jennifer Dickens was a shareholder of Kadenwood and is the wife of Kadenwood's former Chief Executive Officer Erick Dickens.

13.    Claimants are informed and believe, and on that basis allege that Respondent R&R AZ Investments, LLC is, and at all times relevant herein was, a Delaware limited liability company with its principal place of business in Paradise Valley, Arizona, and that Respondent Brent Roland is the Managing Member of R&R AZ Investments, LLC.  R&R AZ Investments, LLC was a shareholder in Kadenwood.

14.    Respondents Mobile Force Investments, LLC, Bradley E. Davis, Brent Roland, Glenn Roland, the Bradley E. Davis Trust, The Roland Family Trust, The Roland Family Support Trust, Coach Investments, LLC, First American Trust of Nevada, LLC, Robert Krakauer,  and Jennifer Dickens are referred to collectively as the "Insiders."

**JURISDICTION**

15.    JAMS has subject matter jurisdiction over the claims herein.

16.    JAMS has personal jurisdiction over the Respondents because the shareholders of Kadenwood were all parties to the Shareholder Agreement and by virtue thereof agreed in the Shareholder Agreement to final and binding arbitration in Orange County, California, administered by JAMS, for any disputes between and among them relating to Kadenwood.

17.    Orange County, California is the proper venue for this matter because the shareholders of Kadenwood agreed in the Shareholder Agreement to venue in JAMS, Orange County, California for any disputes between and among them relating to Kadenwood.

18.    Respondents all served and/or functioned, de jure or de facto, in one or more the following capacities: (i) as members of the Board of Directors of Kadenwood; (ii) as officers of Kadenwood or its subsidiaries, and/or (iii) controlling shareholders of Kadenwood.  Respondents, collectively, controlled Kadenwood.  In these roles, Respondents participated materially in the management of Kadenwood and therefore owed fiduciary duties to Claimants and consented to

personal jurisdiction in JAMS for purposes of litigation arising from or relating to the businesses of Kadenwood or to the duties owed by Respondents, to Kadenwood and its shareholders.

19.     Respondents were active participants in a scheme and/or conspiracy to misappropriate assets from Kadenwood, and eventually to deprive Kadenwood of cash flow or additional contractually obligated financing so that Kadenwood would default and thereafter the assets sold to B&B AZ Holdings, LLC in a private Article 9 sale and could be unfairly repurchased by Respondents through entities they owned and/or controlled and that were created in furtherance of the scheme, and to aid and abet the breaches of fiduciary duty described herein.

20.     As part of this scheme, Respondents acted directly through their actions as controlling officers, directors, and/or shareholders of Kadenwood, and through their or their designees' roles as officers, directors, and/or controlling shareholders of Kadenwood.

21.     Each entity Respondent, including Mobile Force Investments, LLC, Coach Investments, LLC, First American Trust of Nevada, LLC, and R&R AZ Investments, LLC, was aware of and took actions that were an integral part of the self-dealing scheme described below.

22.     The entity Respondents actively and materially assisted the scheme and/or conspiracy to harm Claimants and benefit Respondents.

23.     Respondents exercised their control over Kadenwood as officers, directors, controlling shareholders, and/or through contractual arrangements with Kadenwood to further the scheme and conspiracy.  Among other actions described below, Respondents, acting in their fiduciary capacity as officers, directors, and/or controlling shareholders of Kadenwood, directed that funds due to Kadenwood be withheld from Kadenwood to fund personal expenses or other personal ventures, acted to block a financing proposal that would have saved Kadenwood from default, and cooperated or acquiesced in the appointment of a receiver for Kadenwood while negotiating with Kadenwood's lender in order to purchase its assets in unfair, self-dealing transaction.

24.     Respondents also personally directed and controlled substantially all aspects of Kadenwood's funding and business during the relevant time.  These actions included exercising direct day-to-day control as officers, directors, and/or controlling shareholders of Kadenwood,

defeating a financing proposal that would have prevented Kadenwood from defaulting on its debt, and controlling the actions of Kadenwood's major customers.  The directly foreseeable consequences of the scheme/conspiracy described herein included substantial financial harm to Kadenwood, leading to its default and the fire sale of its assets back to Respondents.

25.    Based upon information and belief, each of the Respondents was an agent, partner, joint venturer, co-conspirator, or alter ego of each of the remaining Respondents and, in doing the acts hereinafter alleged, was acting within the scope of his or its authority as such and with the permission and consent of each of the remaining Respondents.  All of the Respondents participated in a common enterprise and scheme to illicitly maximize their profits by "freezing out" and "squeezing out" Claimants in order to misappropriate their founding membership interests for themselves and/or entities controlled and operated by themselves.

26.    Every Respondent, and each of them, instigated, encouraged, promoted, aided and abetted, and/or rendered substantial assistance to the wrongdoing alleged herein, with knowledge of the wrong and the role that each Respondent played in it.  Every Respondent, and each of them, conspired to commit that wrongdoing which is alleged herein to have been intentional, with knowledge of the wrongful purpose of the wrongdoing, by and in contravention of their duties, actively participating in the wrongdoing, failing to stop or prevent the wrongdoing from occurring or continuing, and/or actively participating in the concealment and non-disclosure of the wrongdoing.

**GENERAL ALLEGATIONS**

27.    This case arises from Respondents' deliberate and coordinated transfer of substantially all of the assets of Kadenwood to a new company they secretly formed to carry on the business of Kadenwood for their own benefit after Kadenwood received an adverse award in its JAMS arbitration against Newberry and the Elysium parties.

28.    On January 26, 2021, Brian Newberry filed a Complaint for Damages against Kadenwood, LLC, Kadenwood Biosciences, LLC, Todd Davis, and Erick Dickens in Orange County Superior Court based on Kadenwood's wrongful termination of Newberry in December 2020.  On April 19, 2021, Newberry filed a First Amended Complaint which stated causes of

6

AMENDED DEMAND FOR ARBITRATION

action for:  (1) whistleblowing in violation of Labor Code § 1102.5; (2) retaliation in violation of the Fair Employment and Housing Act (FEHA), Gov't Code § 12940(h); (3) failure to take all reasonable steps to prevent harassment and retaliation in violation of FEHA, Gov't Code § 12940(k); (4) wrongful termination in violation of public policy; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; (7) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 et seq. (UCL); (8) failure to pay all wages due in violation of Labor Code § 201; (9) waiting time penalties under Labor Code § 203; (10) injunctive and declaratory relief; and (11) defamation.  These claims were later ordered to arbitration pursuant to the parties' agreement.

29.    On July 1, 2021, Kadenwood filed and served a Motion to Compel Arbitration.  On August 4, 2021, Kadenwood and Newberry submitted a stipulation to the Superior Court agreeing to submit the matter, as well as any additional cross-actions that had been or might later be filed by the parties, to binding arbitration before JAMS ADR in Orange County, California.  The binding arbitration agreement provided for the appointment of JAMS Arbitrator the Hon. Rosalyn Chapman (Ret.).

30.    On June 16, 2021, Kadenwood filed a Demand for Arbitration with JAMS ADR in Orange County, California, against Glenn Russell, Eric Johnson, Brian Newberry, and Elysium Asset Management, LLC, alleging four causes of action:  (1) breach of contract; (2) breach of fiduciary duty against Newberry, Russell, and Johnson; (3) fraud against Newberry, Russell, and Johnson; and (4) declaratory relief concerning alleged fraud against Russell, Johnson, and Elysium.  On July 15, 2021, JAMS appointed the Hon. Rosalyn Chapman (Ret.) as Arbitrator after selection by the parties.

31.    On September 21, 2021, the Elysium Parties filed a cross-complaint against Kadenwood and a number of its directors and officers.  The cross-complaint alleged eight causes of action: (1) fraud; (2) negligent misrepresentation; (3)-(4) breaches of contract; (5)-(6) breaches of the implied covenant of good faith and fair dealing; (7) violation of the UCL; and (8) declaratory relief.

32.    Newberry's case against Kadenwood, Kadenwood's case against the Elysium Parties, and the Elysium Parties' cross-complaint were consolidated in the JAMS arbitration,

7

AMENDED DEMAND FOR ARBITRATION

resulting in a single proceeding before the Hon. Rosalyn Chapman (Ret.).

33.    Between July 15, 2021, and June 30, 2022, the parties engaged in extensive written discovery, document exchange, and depositions of parties and witnesses.  The first phase of evidentiary hearings in the arbitration took place from October 10-21, 2022.

<strong>September 23, 2022 Loan Agreement with Insiders</strong>

34.    On September 23, 2022, less than three weeks before the evidentiary hearing in the arbitration began, Kadenwood entered into a $10 million secured Loan Agreement with certain members of its Board of Directors and other company insiders.[1]  (Ex. A.)  The September 23, 2022 Loan Agreement was the first time Kadenwood had entered into a significant secured transaction with lenders, and Kadenwood did not disclose the Loan Agreement to its broader shareholder group or offer shareholders the opportunity to participate in the financing.  The insider lenders held fiduciary positions within Kadenwood and exercised control over the company's financial decisions at the time this secured loan was executed.

<strong>November 17, 2022 Loan and Intercreditor Agreement with Insiders</strong>

35.    On November 17, 2022, less than a month after the first phase of evidentiary hearings concluded on October 21, 2022, Kadenwood entered into a second $10 million secured Loan Agreement with certain Board members and other shareholders.  (Ex. B.)  The November 17, 2022, loan brought Kadenwood's total insider-secured financing to $20 million.  These two secured loan transactions, the first executed immediately before the evidentiary hearing and the second executed immediately after, were the only times Kadenwood had ever entered into secured loan agreements of this nature.

36.    The insider lenders monitored the arbitration proceedings, received updates on the evidence, and were aware that the Arbitrator had repeatedly rejected their credibility and defenses.  They created and executed the insider-financing structure with full knowledge that an adverse award was likely.

---

[1] The insider secured lenders included (1) Todd Davis (Executive Chairman), his wife, and his children, (2) Jennifer Dickens, the wife of Erick Dickens (CEO), (3) Robert Krakauer (CFO), (4) Bradley E. Davis (Board Member), and (5) Brent Roland (Board Member).

8

AMENDED DEMAND FOR ARBITRATION

37.     On November 17, 2022, the insider lenders entered into an Intercreditor Agreement appointing Bradley E. Davis as their agent to act on their behalf in connection with their September 23, 2022 and November 17, 2022 loans.  (Ex. C.)  Through this agreement, the insider lenders centralized control over enforcement rights, including any declaration of default and any foreclosure activity.

38.     Kadenwood's Board and insider lenders did not disclose the September and November 2022 Insider Loan Agreements to the company's other shareholders, including the Claimants who held approximately 20% of the shares in Kadenwood, Inc.  No notice, summary, or explanation of these transactions was provided to the other shareholders.  Nor did Kadenwood allow its shareholder group as a whole the opportunity to participate in the September or November 2022 insider secured loan transactions.  The nondisclosure deprived Claimants of any opportunity to evaluate or object to the creation of $20 million secured insider debt that the insider lenders used as their basis to seize Kadenwood's assets.

**January 23, 2023 Partial Award and Notice of Default**

39.     The Arbitrator issued her initial 60-page Partial Award on January 23, 2023.  The January 23, 2023 Partial Award was in favor of Claimants and against Kadenwood in all material respects.  The Partial Award awarded Claimants a combined total of $6.24 million in damages, plus reasonable attorneys' fees and pre- and post-judgment interest in amounts to be determined.  (Ex. D.)

40.     Respondents were aware that the Arbitrator's findings restored minority shareholders' equity and governance rights, threatening their ability to retain control over Kadenwood.

41.     The Partial Award also preserved Claimants' approximately 20% shareholder interest in Kadenwood by restoring Newberry's 10,600,000 shares in Kadenwood and rejecting Kadenwood's attempt to deprive the Elysium Parties of their approximately 24,000,000 shares in the company.  As of January 23, 2023, Russell, Johnson, and Newberry (individually and through their trusts) were Kadenwood's third, fifth, and sixth largest shareholders, respectively.  A capitalization table issued by Kadenwood on or about February 5, 2023, reflects that Kadenwood

complied with the Partial Award by restoring Newberry's 10,960,000 shares in Kadenwood.  (Ex. E.)

42.    The Arbitrator also set further briefing on the amount of punitive damages, if any, that should be awarded against Kadenwood.

43.    At the time of the January 23, 2023 Partial Award, Respondents were aware that Kadenwood faced more than $17 million in combined liability, including damages, attorneys' fees, pre-judgment interest, and potential punitive damages.  Respondents also knew that ongoing interest and pending motions would further increase this exposure.

**February 1, 2023 Notice of Default Letter from Respondents**

44.    Following the Partial Award, Kadenwood and its Board took no steps toward satisfying any portion of the award and never had any intention of monetarily satisfying an adverse award in the Arbitration.  Respondents had already structured the September and November 2022 insider loans in a manner that pre-positioned the company for a foreclosure and to engage in a fraudulent transfer of its assets in the event Kadenwood lost the arbitration.

45.    Nine days after the Arbitrator issued her January 23, 2023 Partial Award in favor of Claimants, Respondents sent Kadenwood a Notice of Default on their undisclosed September and November 2022 secured loans.  (Ex. F.)

46.    Respondents claimed that the January 23, 2023 Partial Award gave them the right to foreclose on Kadenwood's assets, alleging that Kadenwood had failed to provide "sufficiently complete financial information at the time of the execution of the Loan Agreements, including the failure to fully disclose material information concerning the JAMS Arbitration …."  Respondents stated that, given Kadenwood's default, they would not make any further advances under the November 2022 loan.

47.    At the time Respondents declared a default on February 1, 2023, Kadenwood had not failed to make any payments it was obligated to make to the September or November 2022 lenders.  Thus, there was no monetary default on the September or November 2022 Loan Agreements as of February 2023.

48.    The timing of the insider loans and Respondents' declaration of default nine days

10
AMENDED DEMAND FOR ARBITRATION

after the Partial Award, and the foreclosure immediately following further arbitration rulings, demonstrates that the default and sale were planned responses to the awards.

**Andrew Gundlach Dropped His Opposition to the Alleged Default After He Was Offered the Opportunity to Join Respondents' New Company, B&B AZ Holdings, LLC**

49.     Andrew Gundlach of BleichroederKadenwood, LLC was Kadenwood's largest shareholder.  In response to the February 1, 2023 Notice of Default, Gundlach's representative on Kadenwood's Board, Jonathan Christodoro, sent an email to Kadenwood's senior management on February 6, 2023 contending that there was no default on the September and November 2022 Loan Agreements because (1) the lawsuits had been disclosed to the lenders "any number of times," and (2) the secured lenders had "all of the financial information and accurate knowledge of the financial condition of [Kadenwood]."  (Ex. G.)

50.     In his February 6, 2023, email to Kadenwood, Christodoro wrote:

- The lawsuit was disclosed to the Lenders any number of times. Even if it wasn't, pursuant to the express terms of Section 7.7 the Company need only disclose the lawsuit again in conjunction with the funding request. So, 7.7 is inapplicable.

- You have all of the financial information and accurate knowledge of the financial condition at the Borrower.

- The ongoing discussions with the litigants are just that—ongoing. Until such time as the liability is crystallized, nobody has any idea what the resolution will ultimately be and what kind of an impact it may have on the business.

- The Company has cash needs and is relying on this commitment. Your failure to fund as required under the Loan Agreement will result in damages and loss in value at the Company. The Borrower will absolutely pursue lender liability claims against you for any and all damages resulting from your failure to fund.

- Any failure to fund may result in this Company failing before resolution of the ongoing negotiations with the litigants—in that case, the failure will be a direct result of the Lender not funding and have nothing to do with the litigation.

51.     Kadenwood's CEO Erick Dickens and COO Douglas Weekes testified in the prior arbitration that they agreed with Christodoro's February 6, 2023 assessment.

52.     Despite the lack of an actual default on the September and November 2022 Loan Agreements, Gundlach and Christodoro dropped their opposition to the Insiders' foreclosure on

AMENDED DEMAND FOR ARBITRATION

Kadenwood's assets after Gundlach was given the opportunity to invest in and become a member and manager of the Respondents' new company, B&B AZ Holdings, LLC ("B&B"). After dropping his opposition to the default and foreclosure, Gundlach joined B&B as a member and one of the three managers on B&B's board along with Respondents Bradley Davis and Brent Roland.

53.     With one glaring exception, discussed below, the opportunity to join B&B was not extended to any of the other shareholders of Kadenwood who, like Gundlach, were not secured lenders. Claimants and other non-insider shareholders received no notice of the insider lender's plans, the alleged default, the Article 9 sale, or the formation of B&B, and were not given any opportunity to participate in or respond to these actions.

**Respondents Gave Notice of Default, Abandoned Kadenwood, Left it Leaderless, and Threatened its COO Doug Weekes**

54.     Christodoro's February 6, 2023 email turned out to be prophetic. By early February, all of the insider board members, including Respondents Bradley Davis and Brent Roland, resigned from Kadenwood's board. Kadenwood's management was also crippled. Dickens (CEO) had a conflict of interest and was recused from dealing with the alleged default and Article 9 sale because his wife Respondent Jennifer Dickens was one of the insider lenders.

55.     Respondent Krakauer (CFO) was also one of the Insiders and he resigned from Kadenwood as well. Instead of recusing himself because of his conflict of interest, Krakauer falsely advised Kadenwood that it was in default under the September 2022 Loan Agreement despite the absence of any monetary default.

56.     As of February 28, 2023, Weekes was the only remaining officer at Kadenwood who was not conflicted because he was the only one who did not have a secured interest in Kadenwood's collateral. Weekes was put into an impossible situation by Respondents because they refused to fund the $4 million remaining on the November 2022 loan and threatened Weekes that unless he signed the documents for the Article 9 sale, he would be personally liable for Kadenwood's payroll in March 2023.

57.     Given his potential personal liability for Kadenwood's payroll, Weekes testified in

the arbitration that he felt like he had no meaningful choice but to cave in to Respondents' demands.

58.    When Respondents gave notice of default and refused to fund the remaining amount of their loan, they took full advantage of the crisis and chaos they created and left Kadenwood without functioning leadership, without access to funding, and created the conditions that they then used to proceed with the private sale of the company's assets.

**Notice of Disposition of Collateral, Undisclosed Private Article 9 Sale of Kadenwood's Assets, Termination of Shareholder Agreement, and Liquidation and Dissolution of Kadenwood**

59.    Based on Kadenwood's alleged default, Respondents sent a Notice of Disposition of Collateral to Kadenwood on February 15, 2023.  (Ex. H.)  The Notice of Disposition of Collateral provided that "the Secured Parties currently intend to sell by private disposition on or after February 27, 2023, all of the property subject to the Secured Parties' security interests and pledged by the Debtor to secure the obligations due under the September 2022 Loan Agreement and the November 2022 Loan Agreement."

60.    But Respondents' claims of default were demonstrably false.  Nevertheless, based on the alleged default, Respondents acquired substantially all of Kadenwood's valuable assets in an undisclosed, private Article 9 sale on February 28, 2023.  (Ex. I.)

61.    Respondents then put Kadenwood's assets into a newly formed company—B&B AZ Holdings, LLC dba Healist Naturals, Inc.—and carried on Kadenwood's business under this new name.  (Exs. I and J.)

62.    The February 28, 2023 Secured Party Private Sale Agreement was kept confidential and B&B instructed Kadenwood to not issue any press releases about B&B's acquisition of Kadenwood's assets.

63.    Without any disclosure to Kadenwood's shareholder group as a whole, on February 28, 2023, Respondents voted their shares to terminate the company's Shareholder Agreement. (Ex. K.)  Two weeks later, on March 15, 2023, and again without notice to Claimants or Kadenwood's other shareholders, Respondents voted to liquidate and dissolve the company.  (Ex.

L.)

64.     As part of this process, Brent Roland voted R&R AZ Investments, LLC's 3,003,458 shares to terminate Kadenwood's Shareholder Agreement and to liquidate and dissolve Kadenwood.  The voting of R&R AZ Investments, LLC's 3,003,458 shares was necessary to give the Insiders the majority they needed to accomplish these actions.  Based upon information and belief, Respondent R&R AZ Investments, LLC then received a membership interest in B&B AZ Holdings, LLC even though it was not a secured lender.

65.     The first notice of any of these actions to Claimants and Kadenwood's shareholder group as a whole was on March 24, 2023, over three weeks after Kadenwood's assets had been transferred to Respondents' new company.[2]  (Ex. M.)  By that time, it was too late for the other shareholders to intervene—Respondents had taken the company's assets, the Shareholder Agreement had been terminated, and Respondents had put the company on a one-way road to liquidation and dissolution.

**Kadenwood Failed to Investigate or Oppose Respondents' Phony Default Claim**

66.     After Kadenwood received the February 1, 2023 Notice of Default from Respondents, Kadenwood did not conduct any investigation to determine whether the financial condition of the company had in fact been misrepresented to Respondents.  Likewise, Kadenwood did not conduct any investigation to determine whether the Newberry and Elysium arbitration had been disclosed in writing to Respondents.

67.     Kadenwood also failed to reach out to its shareholder group as a whole to seek to raise money to stave off the foreclosure sale to Respondents.

68.     No one from Respondents provided Kadenwood with any independent third-party appraisal, valuation, or even an estimate of the value of the assets they were acquiring from Kadenwood through the Article 9 sale and subsequent private sales.

69.     And Kadenwood itself did not get any third-party valuation or estimate, even on a

---

[2] Even then, the notice was not provided to Russell or Newberry, both of whom were shareholders on the Cap Table.

AMENDED DEMAND FOR ARBITRATION

rush basis, of the value of the assets Respondents foreclosed on in the Article 9 sale. And Kadenwood failed to conduct any investigation to determine whether the Respondent secured lenders were over secured.

**The Grounds of the Alleged Default Were Demonstrably Untrue**

70.     The theft of Kadenwood's assets by Respondents was as brazen as it was fraudulent. Respondents' claim that Kadenwood had failed to provide "sufficiently complete financial information at the time of the execution of the Loan Agreements" was demonstrably false. In fact, the risks of the Newberry and Elysium arbitration were disclosed to Respondents, in writing, multiple times.

71.     One of the Respondents on whose behalf the Notice of Default letter was sent— Robert Krakauer (CFO)—was one of the individuals who were responsible for making the financial disclosures in the first place. Krakauer has since testified that the Respondent lenders received complete and accurate disclosures concerning Kadenwood's financial situation and the risks associated with the Newberry and Elysium arbitration.

72.     The second ground for the alleged default—failure to fully disclose material information concerning the Newberry and Elysium arbitration—was likewise demonstrably untrue. The risks associated with the arbitration were disclosed to each of the Respondents in writing. Each of the Respondents was a shareholder in Kadenwood. Kadenwood disclosed the "Risks Factors" associated with the Newberry and ISSS/Elysium litigation in writing to each of its shareholders. (See, e.g., Ex. N.)

73.     Respondents' claim that they did not know about Kadenwood's potential liability to Elysium was also disingenuous. The approximately $6 million dollar debt that Kadenwood owed to Elysium that was at-issue in the arbitration was an obligation that arose in July 2020. Each shareholder of Kadenwood was required to sign a Shareholder Agreement or joinder to Kadenwood's Shareholder Agreement. (See Ex. O.) Kadenwood's Shareholder Agreement disclosed Kadenwood's $6 million obligation to Elysium. (See Ex. O at § 4.2(d).)

AMENDED DEMAND FOR ARBITRATION

**The June 29, 2022 Promissory Notes Signed by Respondents Davis, Roland, Dickens, and Krakauer also Disclosed the Risks of the Newberry and Elysium Arbitration**

74.     In addition, the Respondents leading the charge on the default and foreclosure—Davis and Roland—each represented, in writing, that they had received full disclosure concerning Kadenwood's financial affairs and that they were aware of the risks associated with the Newberry and Elysium litigation.  These written representations directly contradict their later claim that they lacked material information when the loans were executed.

75.     On June 29, 2022, Respondents Davis, Roland, Dickens, and Krakauer signed Promissory Notes for loans to Kadenwood totaling $1 million.[3]  (Exs. P, Q, R and S.)  In the June 29, 2022 Promissory Notes signed by Respondents Davis, Roland, Dickens, and Krakauer, they each represented that:

> 6.     <u>Disclosure of Information</u>.  Payee hereby represents and warrants to Maker, as of the date hereof, that (a) Payee has had an opportunity to discuss Maker's business, management, financial affairs and the terms and conditions of this Note with Maker's management; and (b) Maker has made available all additional information that Payee has requested in connection with the transactions contemplated by this Note. Payee has investigated the acquisition of the Note to the extent the Payee deemed necessary or desirable and Maker has provided Payee with any assistance Payee has requested in connection therewith. Payee acknowledges and confirms that it has reviewed and understood the risk factors set forth in <u>Exhibit A</u> hereto.

76.     The disclosures of the risk factors referenced in Exhibit A of the June 29, 2022 Promissory Notes included the risks associated with the Newberry and Elysium arbitration.  (See Exs. P, Q, R and S, Ex. A.)  Thus, months before the insider-secured loans were issued, Respondents Davis, Roland, Dickens, and Krakauer, explicitly acknowledged the very risks they later asserted were "not disclosed," confirming that there was no factual basis for declaring a default.

77.     Finally, Roland also claimed that Respondents had a right to foreclose on Kadenwood's assets because the Partial Award constituted a material adverse event for

---

[3] Davis, Roland, Dickens, and Krakauer's June 29, 2022 loans totaling $1 million were rolled over into the September 23, 2022 loan.

Kadenwood.  But the September and November 2022 Loan Agreements did not contain language providing that a material adverse event constituted a default under the Loan Agreements. Thus, even apart from the factual misrepresentations addressed above, there was no contractual basis for any such default.

**The Value of The Assets Taken by Respondents Far Exceeded their Secured Debt**

78.     As of February 2023, Kadenwood had drawn down the full $10 million on the September 2022 loan and $6 million on the November 2022 loan.  Kadenwood used $5 million of the $6 million in proceeds from the November 2022 loan to acquire Probulin in late 2022.  By February 2023, the November 2022 lenders had only put approximately $1 million into the company other than for its acquisition of Probulin.  Although the insider loan agreements were nominally structured as $20 million in secured financing, only a small portion of that amount represented new money actually provided to the company.

79.     In late 2022 and January 2023, Kadenwood's management was very bullish on the future of the company because the company was set to launch new plant-based health products in early 2023.  Kadenwood's launch of its plant-based health products in early 2023 was successful and key retailers including CVS, Walgreens, Walmart, and Amazon accepted the products for sale. Kadenwood's launch of its non-CBD plant-based products was very favorable to the future of the company.

80.     Even before these positive developments, and at the time Kadenwood entered into the September and November 2022 Loan Agreements, Kadenwood valued its business at approximately $250 million.  Accordingly, the assets that Respondents later acquired through the private sale had a value that was many times greater than the limited amount of new capital the insider lenders had actually contributed.

**The Second Partial Award and Final Award**

81.     On May 4, 2023, the Arbitrator issued a 76-page Second Partial Award setting forth the amount of damages, pre-judgment interest, and attorneys' fees and costs, to which Newberry and the Elysium parties were entitled.  (Ex. T.)

82.     Between January 8, 2024 to January 11, 2024, the Arbitrator held an evidentiary

17

AMENDED DEMAND FOR ARBITRATION

hearing on the remaining material unresolved issues submitted to arbitration.  After the hearing, on February 22, 2024, the Arbitrator issued a 93 page, single-spaced "Final Award" resolving all remaining claims.  (Ex. U.)

83.     The Final Award held that Kadenwood was liable to pay Newberry $10,613,912.53 in damages, attorneys' fees, costs, and punitive damages, and that Kadenwood was liable to pay the Elysium Parties $9,451,221.69 in damages, attorneys' fees, costs, and pre-judgment interest. The Arbitrator further found that Kadenwood's conduct in connection with the underlying disputes warranted a punitive damages award against Kadenwood.

84.     On November 19, 2024, Orange County Superior Court Judge Gassia Apkarian confirmed the Final Award and entered Judgment in the amount of $10,620,340.63 in favor of Newberry and against Kadenwood.  (Ex. V.)

85.     On March 24, 2025, United States District Court Judge John W. Holcomb confirmed the Final Award and entered Judgment in the amount of $9,451,221.69 in favor of the Elysium Parties and against Kadenwood.  (Ex. W.)

86.     In light of Respondents' transfer of substantially all of Kadenwood's assets to themselves and their new company before the Final Award could be satisfied in order to avoid the adverse award in the Newberry and Elysium arbitration, Claimants have been forced to file this Demand for Arbitration to protect their interests.

### FIRST CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(Against Respondents Davis, Brent Roland, and Krakauer)**

87.     Claimants re-allege and incorporate by reference the allegations in Paragraphs 1-86 as though fully set forth herein.

88.     At all relevant times, Respondents Davis, Roland, and Krakauer served as officers, directors, controlling shareholders, or individuals who exercised de facto control over the management, finances, and strategic decisions of Kadenwood and its assets.

89.     As fiduciaries of Kadenwood and its shareholder group, including Claimants, Respondents Davis, Roland, and Krakauer owed duties of loyalty, care, good faith, and full

AMENDED DEMAND FOR ARBITRATION

candor, and the obligation to refrain from self-dealing or using corporate authority for personal advantage.

90.    These fiduciary duties required Respondents Davis, Roland, and Krakauer to disclose material information to shareholders, avoid conflicts of interest, refrain from favoring their own interests over those of the company, preserve corporate assets, and act in a manner consistent with the best interests of Kadenwood and its shareholders.

91.    Respondents Davis, Roland, and Krakauer breached these duties by, among other things: structuring undisclosed insider loan agreements; concealing material facts from Claimants; manufacturing a false and pretextual default; refusing to fund the remaining required amounts under the November 2022 loan; appointing an insider "agent" to control foreclosure and enforcement decisions; resigning to leave the company without independent leadership; and engineering a private Article 9 sale that transferred substantially all corporate assets to an entity they controlled.  Respondents Davis, Roland, and Krakauer intentionally failed to disclose the insider loan agreements, the purported default, the default notices, the planned private foreclosure sale, the formation of B&B AZ Holdings, LLC, and the dissolution of Kadenwood, despite knowing that Claimants collectively held approximately 20% of the company and were major creditors.

93.    Respondents Davis, Roland, and Krakauer's self-dealing misconduct diverted all valuable corporate assets to  themselves, left Kadenwood insolvent and unable to operate, and rendered the company incapable of satisfying the arbitration awards owed directly to Claimants.

94.    As a direct and proximate result of Respondents Davis, Roland, and Krakauer's breaches of fiduciary duty, Claimants suffered damages including, without limitation, the loss of the economic value of their shares, the loss of their proportionate ownership interests in Kadenwood, and the inability to collect on the arbitration awards.

95.    Claimants are entitled to compensatory damages, disgorgement, restitution, and all other appropriate legal and equitable relief.

AMENDED DEMAND FOR ARBITRATION

## SECOND CAUSE OF ACTION

### Aiding and Abetting Breach of Fiduciary Duty

### (Against all Respondents)

96.    Claimants re-allege and incorporate by reference the allegations in Paragraphs 1-95 as though fully set forth herein.

97.    To the extent any Respondent did not personally owe a fiduciary duty to Kadenwood or its shareholders, each Respondent had actual knowledge of the fiduciary breaches committed by Davis, Roland, and Krakauer.  Each Respondent was aware of the insider loan structure, the undisclosed default strategy, the internal opposition raised by Kadenwood's management, and the plan to transfer Kadenwood's assets to a new insider-controlled entity.

98.    Despite this knowledge, Respondents provided substantial assistance and encouragement to the breaches by, among other things:

a.    Entering into and funding insider loan agreements that created the mechanism for the foreclosure;

b.    Preparing and issuing false and misleading default notices despite the absence of any monetary default;

c.    Coordinating and approving the private foreclosure sale and transfer of substantially all of Kadenwood's assets to an entity they controlled;

d.    Facilitating the transfer of assets into B&B AZ Holdings, LLC and continuing Kadenwood's business under that new entity; and

e.    Approving the termination of Kadenwood's Shareholder Agreement and the dissolution of the company without disclosure to Claimants.

99.    Each Respondent knowingly participated in the insider scheme and took actions that were integral to the execution of the breaches.  The breaches could not have occurred without Respondents coordinated assistance.

100.    As a direct and proximate result of Respondents' aiding and Davis, Roland, and Krakauer's breaches of fiduciary duty, Claimants suffered damages, including but not limited to the loss of the value of their shares, their inability to protect their interests as shareholders and

creditors, and their inability to collect on the arbitration awards.

## THIRD CAUSE OF ACTION

### Civil Conspiracy

### (Against all Respondents)

101.    Claimants re-allege and incorporate by reference the allegations in Paragraphs 1-100 as though fully set forth herein.

102.    Respondents agreed, expressly or impliedly, to participate in a coordinated scheme to deprive Claimants of their shareholder interests and their ability to collect on the arbitration awards.  The agreement is evidenced by, among other things, the coordinated execution of insider loan agreements, the November 17, 2022 Intercreditor Agreement appointing Bradley Davis as the unified agent for all insider lenders, the collective decision to declare a false default, the orchestrated resignations from Kadenwood's board, and the simultaneous formation and funding of B&B AZ Holdings, LLC for the purpose of acquiring Kadenwood's assets.

103.    In furtherance of the conspiracy, Respondents engaged in numerous overt acts, including but not limited to manufacturing a false default; refusing to fund the remaining loan amount while knowing Kadenwood faced imminent payroll obligations; threatening Kadenwood's COO, Doug Weekes, with personal liability to coerce his signature; conducting a private insider Article 9 sale of substantially all of Kadenwood's assets to a Respondent-controlled entity; dissolving Kadenwood without notice to Claimants; and concealing the transfer and dissolution until after completion to ensure Claimants could not intervene.

104.    As a direct and foreseeable result of Respondents' coordinated conspiracy, Claimants suffered damages including, without limitation, the loss of their shareholder value, the destruction of their equity interests, and the inability to collect the judgments awarded to them in the arbitration.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### (Against all Respondents)

105.    Claimants re-allege and incorporate by reference the allegations in Paragraphs 1-

104 as though fully set forth herein.

106.    Respondents were unjustly enriched when they acquired substantially all of Kadenwood's assets through an insider-engineered foreclosure sale that they orchestrated, controlled, and concealed from Claimants.

107.    Respondents obtained these assets for far less than their fair value and on terms unavailable to any non-insider shareholder, allowing Respondents to capture the entire value of Kadenwood's operating business, brands, inventory, intellectual property, customer relationships, and revenue streams.

108.    This enrichment occurred directly at Claimants' expense. By diverting the assets to themselves, Respondents stripped Claimants of the value of their equity interests and rendered Kadenwood unable to satisfy the arbitration awards owed to Claimants.

109.    It would be inequitable to permit Respondents to retain these benefits. Kadenwood's management valued the company at approximately $250 million, yet Respondents contributed only limited new capital under the purported insider-secured financing while positioning themselves to seize the entirety of the business for their own benefit.

110.    Claimants seek restitution, disgorgement of all benefits wrongfully obtained by Respondents, and all other appropriate equitable relief.

### FIFTH CAUSE OF ACTION

**Declaratory Relief**

**(Against all Respondents)**

111.    Claimants re-allege and incorporate by reference the allegations in Paragraphs 1-110 as though fully set forth herein.

112.    An actual and present controversy exists concerning the validity of the insider loan agreements, the February 1, 2023 default notice, the February 28, 2023 private sale, and the dissolution of Kadenwood.

113.    Claimant seeks a declaration that:

    a.    The default was invalid;

    b.    The insider sale was void or voidable;

22

c.       Any transfers arising from it were fraudulent;

d.       Respondents may not rely on the insider loans or foreclosure to defeat Claimant's rights.

## PRAYER FOR RELIEF

WHEREFORE, Claimants Brian Newberry, The Newberry Family Trust, Glenn Russell, The Laura & Glenn Russell Revocable Trust, Eric Johnson, Twin Harbors LLLP, and Elysium Asset Management, LLC, pray for judgment against Respondents Mobile Force Investments, LLC, Bradley E. Davis, Brent Roland, Glenn Roland, Coach Investments, LLC, First American Trust of Nevada, LLC, Robert Krakauer, Jennifer Dickens, R&R AZ Investments, LLC, and Does 1-20, and each of them, as follows:

1.       Finding each said Respondent jointly and severally liable on each applicable Count set forth above;

2.       Awarding damages sufficient and adequate to compensate Claimants for the injuries and damage caused by Respondents, in an amount to be determined at trial, including, without limitation, compensatory damages, recessionary damages, and/or equitable disgorgement;

3.       Ordering a full accounting of Kadenwood's affairs, including, without limitation, an accounting of all transactions between any Respondents and any of their Affiliates on the one hand and Kadenwood on the other hand during the period relevant to the transfers alleged herein.

4.       Declaring a constructive trust over any Kadenwood assets purchased or otherwise obtained by any Respondents from Kadenwood.

5.       Avoiding any and all fraudulent transfers and/or awarding Claimants its damages resulting there from; and

6.       Awarding pre-judgment and post-judgment interest, as allowed by law; and

7.       Awarding Claimant its attorneys' fees, costs, and other legal and/or equitable relief as is fair and just and/or allowed by law or under the terms of the Kadenwood Shareholder Agreement.

23

AMENDED DEMAND FOR ARBITRATION

Respectfully submitted,

Dated: February 17, 2026          **GOE FORSYTHE & HODGES LLP**

By: _____
    Ronald S. Hodges
    Ashley N. Kinder
    Taylor DeRosa
Attorneys for Claimants
Brian Newberry and The Newberry Family Trust


Dated: February 17, 2026          **RIZIO LIPINSKY LAW FIRM, P.C.**

By: _____
    Daren H. Lipinsky
Attorneys for Claimants
Brian Newberry and The Newberry Family Trust


Dated:  February 17, 2026          **LARSON LLP**

By: _____
    Stephen G. Larson
    Steven E. Bledsoe
    Daniel R. Lahana
Attorneys for Claimants
Glenn Russell, The Laura & Glenn Russell Revocable
Trust, Eric Johnson, Twin Harbors LLLP, and Elysium
Asset Management, LLC

24
AMENDED DEMAND FOR ARBITRATION