Ronald S. Hodges (SBN 150586)
*rhodges@goeforlaw.com*
Ashley N. Kinder (SBN 363008)
*akinder@goeforlaw.com*
Taylor DeRosa (SBN 319853)
*tderosa@goeforlaw.com*
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D., Suite 210
Irvine, CA 92614
Telephone: (949) 798-2460

Daren H. Lipinsky (SBN 190955)
*dlipinsky@riziolawfirm.com*
**RIZIO LIPINSKY HEITING, P.C.**
14771 Plaza Drive, Suite A
Tustin, CA 92780
Telephone: (714) 505-2468¶

Attorneys for Defendants
Brian Newberry and The Newberry
Family Trust

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Steven E. Bledsoe (SBN 157811)
*sbledsoe@larsonllp.com*
Daniel R. Lahana (SBN 305664)
*dlahana@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile:  (213) 623-2000

Attorneys for Defendants
Glenn Russell, The Laura & Glenn
Russell Revocable Trust, Eric Johnson,
Twin Harbors LLLP, and Elysium Asset
Management, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOBILE FORCE INVESTMENTS, LLC, an Arizona limited liability company, BRADLEY E. DAVIS, BRENT ROLAND, and GLENN ROLAND,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIAN NEWBERRY, THE NEWBERRY FAMILY TRUST, GLENN RUSSELL, THE LAURA & GLENN RUSSELL REVOCABLE TRUST, ERIC JOHNSON, TWIN HARBORS LLLP, a Nevada limited liability limited partnership, and ELYSIUM ASSET MANAGEMENT LLC, a California limited liability company,<br><br>Defendants. | Case No. 2:26-cv-02070-MEMF-DFM<br><br>**DEFENDANTS BRIAN NEWBERRY, THE NEWBERRY FAMILY TRUST, GLENN RUSSELL, THE LAURA & GLENN RUSSELL REVOCABLE TRUST, ERIC JOHNSON, TWIN HARBORS LLLP, AND ELYSIUM ASSET MANAGEMENT, LLC'S JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE**<br><br>Judge:  Hon. Maame Ewusi–Mensah Frimpong<br>Date:  May 28, 2026<br>Time:  10:00 a.m.<br>Crtrm.: 8B, 8th Floor, First Street Courthouse |

---

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................... 4

II.   ARGUMENT ......................................................................................................... 5

    A.    Plaintiffs' Failure to Specifically Challenge the Delegation Clause is Dispositive. ......................................................................... 5

    B.    *Olson v. FCA US, LLC* Does Not Apply Here — it Confirms that Defendants are Entitled to Compel Arbitration. ................................... 6

        1.    The parties' positions in *Olson* are the structural reverse of those here. ........................................................................... 6

        2.    The Individual Plaintiffs are not analogous to the *Olson* consumer. .............................................................................. 7

        3.    Plaintiffs' selective quotation omits the limiting language that defeats their argument. .................................................... 7

        4.    The *Henry Schein* analysis in *Olson* confirms Defendants' position. ............................................................................. 8

    C.    Plaintiffs Signed Subscription Agreements and Shareholder Consents Confirming they were Parties to the Kadenwood Shareholder Agreement. ..................................................................... 9

    D.    Plaintiffs' Party-Status Argument Fails. ............................................. 10

    E.    Plaintiffs' Trustee-Versus-Individual Argument Presents a False Dichotomy. ....................................................................................... 11

    F.    Equitable Estoppel Independently Precludes Plaintiffs' Repudiation. ...................................................................................... 12

    G.    The Termination Defense Fails on Four Independent Grounds. .......... 14

III.  CONCLUSION ................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arthur Andersen LLP v. Carlisle,*
    556 U.S. 624 (2009) ...................................................................................12

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006) ...................................................................................14

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    586 U.S. 63 (2019) .......................................................................................8

*Herrera v. Cathay Pac. Airways Ltd.,*
    104 F.4th 702 (9th Cir. 2024)....................................................................13

*Olson v. FCA US, LLC,*
    No. 24-6527, 2026 WL 934267 (9th Cir. Apr. 7, 2026) ............................*passim*

*Rent-A-Center, West, Inc. v. Jackson,*
    561 U.S. 63 (2010) .........................................................................4, 5, 6, 15

**California Cases**

*Arthur Andersen, Herrera, JSM Tuscany, LLC v. Super. Ct.,*
    193 Cal. App. 4th 1222 (2011)..................................................................13

*Metalclad Corp. v. Ventana Env't Org. P'ship,*
    109 Cal. App. 4th 1705 (2003)..................................................................13

*Oxford Preparatory Acad. v. Edlighten Learning Sols.,*
    34 Cal. App. 5th 605 (2019)......................................................................15

**Federal Statutes**

Bankruptcy Code Chapter 7.................................................................................14

**Other State Statutes**

Ariz. Rev. Stat.
    § 14-10816(24) ..........................................................................................12
    § 14-11012(A) ............................................................................................12

LARSON
LOS ANGELES

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

## I.    INTRODUCTION

Plaintiffs' opposition raises no argument that defeats Defendants' motion. The threshold issue is simple: Plaintiffs have not specifically and independently challenged the delegation clause in Section 11.9 of the Shareholder Agreement, and their failure to do so is fatal to their position. Under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), that is the end of the inquiry. The Court need not address—and under binding precedent cannot address—the merits of Plaintiffs' arbitrability objections. This case must be dismissed and Plaintiffs directed to JAMS.

If the Court nevertheless reaches the merits, the opposition fails equally. Plaintiffs do not dispute that their trusts were Kadenwood shareholders bound to the Shareholder Agreement with its binding arbitration clause. Plaintiffs also do not dispute that on February 28, 2023, each of the Individual Plaintiffs personally signed the Stockholder Consent acknowledging that "the Company and its stockholders are parties to that certain Kadenwood Inc. Shareholder Agreement"—and did so expressly as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)" and as "Series B Holders (as defined in the Shareholder Agreement)." Plaintiffs Brent and Glenn Roland also do not dispute that they also signed Subscription Agreements in 2021 and 2022 "agree[ing] to be bound by all the terms and provisions of the Shareholder Agreement ...."[1] (Bledsoe Supp. Decl., ¶¶ 3-5, Exs. I-K.) Those admissions establish party status and cannot be undone.

---

[1] Plaintiffs half-hearted objection concerning the timing of the Supplemental Declaration Based on Newly Produced Evidence is not well-taken. Defendants submitted this newly produced evidence less than 24 hours after it was received from Kadenwood, and nine days before Plaintiffs' opposition was due. (Bledsoe Supp. Decl., ¶ 2.)  Plaintiffs cannot have been prejudiced by the submission of documents that, although newly-discovered by Defendants, have been in Plaintiffs' possession for over four years. (See *id.* at ¶¶ 3-5, Exs. I-K.)

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

Finally, Plaintiffs attempt to recast their individual signatures as purely representative acts on behalf of legally distinct entities, and close their opposition with a citation to *Olson v. FCA US, LLC*, No. 24-6527, 2026 WL 934267 (9th Cir. Apr. 7, 2026). Neither argument withstands scrutiny. *Olson* addressed a pure non-signatory automobile manufacturer attempting to leverage an arbitration agreement between a consumer and a car dealership to which the manufacturer was wholly unrelated. That is the structural inverse of this case, where Defendants are themselves signatories seeking to enforce an agreement that Plaintiffs' own signed documents confirm they were bound by. The motion should be granted.

## II.    ARGUMENT

### A.    Plaintiffs' Failure to Specifically Challenge the Delegation Clause is Dispositive.

Plaintiffs' opposition devotes a single paragraph to the delegation clause, arguing only that the Court "first must determine whether an agreement to arbitrate exists before examining the delegation clause." Opp. at 14. But this generic recitation of arbitration law ignores the controlling doctrine on delegation.

Section 11.9 of the Shareholder Agreement provides that each Shareholder "irrevocably and unconditionally consents to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." That is a textbook delegation clause that directly covers both objections Plaintiffs raise here.

Under *Rent-A-Center*, once a delegation clause exists, a court may not address arbitrability "unless [the challenge is to] the delegation provision specifically." 561 U.S. at 72. "A party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* at 70. Plaintiffs' challenge here is directed at the Shareholder Agreement as a whole — they contend they were never parties to it, and that it was

5

terminated — but neither argument is directed specifically at Section 11.9 itself. That is precisely the kind of attack that *Rent-A-Center* holds insufficient to displace a delegation clause. The Court cannot reach those merits. The Court should dismiss this action and direct Plaintiffs to present their objections to the JAMS arbitrator as they contractually agreed.

### B. *Olson v. FCA US, LLC* Does Not Apply Here — it Confirms that Defendants are Entitled to Compel Arbitration.

Plaintiffs close their opposition by citing *Olson v. FCA US, LLC*, No. 24-6527, 2026 WL 934267 (9th Cir. Apr. 7, 2026), for the proposition that "even the existence of a delegation clause could not force a non-signatory to arbitration," quoting the court's statement that "[w]ith limited exceptions, non-parties to an arbitration agreement cannot enforce the agreement's terms against a signatory." *Olson* does not say what Plaintiffs need it to say, and it is distinguishable on every fact that matters.

#### 1. The parties' positions in *Olson* are the structural reverse of those here.

In *Olson*, an automobile manufacturer, FCA, sought to enforce a delegation clause in an arbitration agreement contained in a lease between the plaintiff consumer and a car dealership — a contract to which FCA was not a party. The arbitration agreement expressly limited its terms to "you" (the consumer) and "us or our employees, agents, successors or assigns" (the dealership), and FCA did not claim to be an employee, agent, successor, or assign of the dealership. The Ninth Circuit held that because FCA was a pure non-signatory with no contractual relationship to the consumer whatsoever, there was no "clear and unmistakable evidence" that the consumer had agreed to arbitrate arbitrability with FCA, and the delegation clause could not be weaponized by a total stranger to the agreement to force arbitration. The court expressly limited its holding, noting that several sister-circuit cases were distinguishable because the nonsignatories in those cases "were

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

either successors or assignees of a signatory to the arbitration agreements."

Defendants here are not like FCA. Defendants have themselves acknowledged in writing that they are signatories and subject to the Shareholder Agreement containing Section 11.9. There is no *Olson* problem. The entire analytical premise of *Olson* — a non-signatory invoking someone else's arbitration agreement against a signatory — is absent from this case.

## 2. The Individual Plaintiffs are not analogous to the *Olson* consumer.

The consumer in *Olson* had signed one agreement with the dealership, and FCA attempted to leverage that dealer agreement to compel arbitration of entirely separate statutory warranty claims that arose under California law independent of the lease. The Ninth Circuit rejected equitable estoppel because "none of Olson's claims [were] founded in or intertwined with the terms of the lease agreement" — they relied instead on "rights created by California statutes and by a warranty provided directly by FCA." The Individual Plaintiffs are in a categorically different position. Their obligations arise directly from the Shareholder Agreement itself. Each signed the Stockholder Consent as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)" and as "Series B Holders (as defined in the Shareholder Agreement)," voting the precise share counts held by their respective trusts — a direct, written invocation of rights and capacities defined by the very Agreement they now seek to disclaim. The *Olson* consumer never made any such acknowledgment of any contractual relationship with FCA.

## 3. Plaintiffs' selective quotation omits the limiting language that defeats their argument.

The *Olson* court stated: "With limited exceptions, non-parties to an arbitration agreement cannot enforce the agreement's terms against a signatory," and concluded that "no exceptions to the general rule that only parties to an arbitration agreement can enforce it apply here." The court's entire holding rested on the absence of any

recognized exception — agency, equitable estoppel, third-party beneficiary, assumption, or incorporation by reference. The court acknowledged that "a litigant who is not a party to a contract containing an arbitration agreement may compel arbitration under that agreement if contract law in the relevant jurisdiction would allow the litigant to enforce the contract," citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Here, by contrast, the recognized exceptions are squarely present: (1) the Shareholder Agreement's definition of "Shareholder" expressly includes the "legal representatives" of each trust-shareholder, making each trustee a direct party in that capacity; (2) the Individual Plaintiffs personally signed the Stockholder Consent in expressly-defined capacities under the Shareholder Agreement; and (3) equitable estoppel independently precludes parties who exercised substantial contractual rights from repudiating the obligation that was a condition of those rights.

### 4.    The *Henry Schein* analysis in *Olson* confirms Defendants' position.

The *Olson* court distinguished *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), precisely because "in *Henry Schein*, it was undisputed that Schein was effectively a party to the arbitration agreement containing the delegation clause," and the Court "was not asked to consider whether a delegation clause requires delegating the arbitrability question to an arbitrator when there is not a valid arbitration agreement between the party moving to compel arbitration and the party it is seeking to compel." That is this case. Defendants are parties to the Shareholder Agreement and its delegation clause. *Henry Schein*'s instruction — that courts must enforce delegation clauses — therefore applies with full force.

In sum, *Olson* stands for the unremarkable principle that a pure non-signatory cannot bootstrap a delegation clause to avoid a court's threshold inquiry into whether any agreement ever existed between the parties. It does not hold — and could not hold — that a signatory seeking to enforce an arbitration agreement

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

against parties whose own signed documents confirm their obligations is similarly constrained.

### C.    Plaintiffs Signed Subscription Agreements and Shareholder Consents Confirming they were Parties to the Kadenwood Shareholder Agreement.

The Subscription Agreements and Stockholder Consent signed by Plaintiffs tell a single, unbroken story of the Individual Plaintiffs' knowing participation as Shareholder Agreement parties. The Subscription Agreement required each Series B investor to "agree to be bound by all the terms and provisions of the Shareholder Agreement of the Company," and the subscription instructions made delivery of "a signed Joinder Agreement to the Shareholder Agreement" a mandatory component of the investor's closing obligations.

The Stockholder Consent expressly recited that "the Company and its stockholders are parties to that certain Kadenwood Inc. Shareholder Agreement," and the Individual Plaintiffs signed it expressly as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)" and as "Series B Holders (as defined in the Shareholder Agreement)," each beside the precise share count voted by his respective trust.

Taken together, the Subscription Agreement joinder shows how the Individual Plaintiffs' trusts became bound to the Shareholder Agreement, and the Stockholder Consent shows that the Individual Plaintiffs themselves — two years later, in their own digital handwriting — acknowledged that binding relationship was still in force. The Supplemental Declaration adds confirmation of specific Roland trust signature pages, but the core evidentiary record was before the Court from the outset. The objection is a distraction; whether sustained or overruled, it does not affect the outcome.

The evidentiary record thus confirms that the Individual Plaintiffs are bound by Section 11.9 of the Shareholder Agreement. From Subscription to Consent, the

9

documents trace an unambiguous arc: the Individual Plaintiffs' trusts became parties to the Shareholder Agreement and the Individual Plaintiffs themselves — signing not as strangers to the Agreement but in roles expressly defined by it — reaffirmed that membership in February 2023. That foundation forecloses the party-status argument entirely. The question is not whether the Individual Plaintiffs agreed to arbitrate — their own signatures answer that — but whether they may now disclaim obligations they exercised to their considerable benefit.

### D.    Plaintiffs' Party-Status Argument Fails.

The party-status question is not close. Section 1.41 of the Shareholder Agreement defines "Shareholder" to include the Shareholder and its "legal representatives, permitted successors, and permitted assigns." Kadenwood's former CFO Robert Krakauer and former COO Douglas Weekes both testified under oath that every Kadenwood shareholder was required to sign a Shareholder Agreement or a Joinder to the Shareholder Agreement. The Individual Plaintiffs' trusts held Series B Preferred Shares, as confirmed by the February 5, 2023 Capitalization Table listing the Roland Family Trust, the Bradley E. Davis Trust UTA dated 1-1-2014, and the Roland Family Support Trust as Kadenwood shareholders. The trusts therefore executed Joinder Agreements to the Shareholder Agreement as a condition of acquiring their shares — making the trusts parties. The Individual Plaintiffs, as trustees and legal representatives of those trusts, are swept directly into Section 1.41's definition.

The opposition's central contention — that the Stockholder Consent "does not identify any of the Individual Plaintiffs" — is demonstrably incorrect. The Stockholder Consent expressly identifies "Controlling Shareholders" as including "The Bradley E. Davis Trust UTA dated 1-1-2014," "R&R AZ Investments LLC," "Roland Family Trust," and "The Roland Family Support Trust."  Those are the very trusts of which Davis, Brent Roland, and Glenn Roland are trustees. Below that recital, Davis and Brent Roland signed as "CONTROLLING SHAREHOLDERS (as

10

defined in the Shareholder Agreement),” and Davis, Brent Roland, and Glenn Roland separately signed as “Series B Holders (as defined in the Shareholder Agreement),” each beside the specific share count held by his respective trust: 3,391,817 for the Bradley E. Davis Trust; 2,688,300 for the Roland Family Trust; and 714,367 for the Roland Family Support Trust.

Plaintiffs’ assertion that they were “never” parties to the Shareholder Agreement is irreconcilable with a document in which they expressly acknowledged being stockholder parties to that Agreement.

### E.    **Plaintiffs’ Trustee-Versus-Individual Argument Presents a False Dichotomy.**

Confronted with this record, Plaintiffs retreat to a single argument: that each signature was affixed not by the Individual Plaintiffs as individuals, but by trustees acting solely on behalf of legally distinct trust entities, such that the signatories and the persons Defendants seek to compel are not the same. Plaintiffs contend that because Brad Davis signed “as Partner” for The Bradley E. Davis Trust and Brent Roland signed “as Trustee” for the Roland Family Trust and related trusts, the Individual Plaintiffs were merely conduits — agents who incurred no obligations of their own. The argument conflates the formality of the signature block with the substance of the obligation assumed.

First, the Shareholder Agreement does not bind only those who signed in their individual names. It expressly binds each Shareholder and its “legal representatives.” A trustee is, by definition, the legal representative of the trust — a point Plaintiffs themselves concede when invoking Arizona trust law to establish that “the legal representative of a trust governed by Arizona law is the trustee.” Opp. at 13-14. Plaintiffs thus argue both that they signed only as legal representatives of their trusts and that being a legal representative exempts them from the Agreement’s express reach — a position the Agreement’s own text will not support.

DEFENDANTS’ JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

LARSON
LOS ANGELES

Plaintiffs argue Defendants were "entitled to name a shareholder trust and its current trustee" in a trustee capacity, but not to name the same individual in his individual capacity.[2] This distinction is legally hollow under the applicable law. Under the Arizona Trust Code, a trustee holds legal title to trust property in the trustee's fiduciary capacity and is both authorized and required to sue and be sued in that capacity with respect to trust assets and obligations arising from the administration of the trust. See Ariz. Rev. Stat. § 14-11012(A); Ariz. Rev. Stat. § 14-10816(24). Naming each Individual Plaintiff in both capacities is not duplicative — it is essential to ensuring that any arbitral award is enforceable against both the individual Plaintiffs personally and the trust assets over which they exercise fiduciary control, and that Plaintiffs cannot argue post-award that the judgment runs only against the individual and not the trust, or only against the trust and not the individual. Finally, whether liability ultimately attaches to the individual personally or only to trust assets is a merits question for the arbitrator, not a threshold bar to arbitration.

### F. Equitable Estoppel Independently Precludes Plaintiffs' Repudiation.

Even if Plaintiffs could manufacture a colorable dispute about formal signatory status — which their own documents foreclose — equitable estoppel bars them from avoiding the arbitration clause. Under the "direct benefits" theory, a party who exercises rights under or accepts benefits from a contract containing an arbitration clause cannot simultaneously disclaim that clause. *Arthur Andersen LLP*

---

[2] Inasmuch as Defendants are claiming that Plaintiff failed to identify defendants in their capacities as trustees of their respective trusts, the individuals were clearly identified in the First Amended Complaint as trustees of their respective trusts, giving Defendants requisite notice that they were being sued in their capacities as *both* trustees and individuals. Plaintiff's Amended Demand for Arbitration, ¶¶ 5, 7, 8, 10, 13 and 14.

LARSON
LOS ANGELES

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

*v. Carlisle*, 556 U.S. 624, 631 (2009); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 710 (9th Cir. 2024).

On February 28, 2023, in their acknowledged capacities as Controlling Shareholders and Series B Holders under the Shareholder Agreement, Plaintiffs voted their shares to terminate it and simultaneously seized substantially all of Kadenwood's assets through the Article 9 sale, transferring those assets to B&B AZ Holdings, LLC and receiving membership interests in return. Having accepted the economic fruits of those shareholder voting rights, Plaintiffs cannot now disclaim the arbitration obligation that was a non-negotiable condition of their shareholder status.

The equitable estoppel analysis here is precisely the opposite of *Olson*. In *Olson*, the court rejected FCA's estoppel argument because the plaintiff's claims arose entirely from California statutes and FCA's own manufacturer warranty — they were not "founded in or intertwined with" the lease agreement at all. Here, Defendants' claims arise directly from Plaintiffs' exercise of rights under the Shareholder Agreement itself — their voting of shares, their declaration of the Article 9 sale, and their termination of the Agreement. There is no more direct intertwining with a contract's terms than exercising its core governance rights while simultaneously stripping the company of its assets. Estoppel applies squarely.

The opposition attempts to distinguish *Arthur Andersen*, *Herrera*, *JSM Tuscany, LLC v. Super. Ct.*, 193 Cal. App. 4th 1222 (2011), and *Metalclad Corp. v. Ventana Env't Org. P'ship*, 109 Cal. App. 4th 1705 (2003), as cases involving non-signatories invoking arbitration against signatories rather than signatories compelling non-signatories. But the Individual Plaintiffs are not non-signatories. They are parties who executed the Stockholder Consent in their express capacities under the Shareholder Agreement and exercised its most consequential rights. The estoppel doctrine applies with full force.

## G.      The Termination Defense Fails on Four Independent Grounds.

Plaintiffs argue the Shareholder Agreement was terminated, extinguishing any arbitration obligation. This argument fails at every level.

*First,* the question of whether the Agreement was validly terminated is itself delegated to the arbitrator. Section 11.9 expressly covers disputes about the Agreement's "breach, termination, enforcement, interpretation or validity." Plaintiffs have not specifically challenged this delegation. They cannot invoke the very termination that Defendants are challenging in the arbitration as grounds for refusing to submit to that arbitration. Under the FAA's severability doctrine, an arbitration clause survives challenges to the validity or continued existence of the broader contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447-449 (2006).

*Second,* Section 9.2 was not validly triggered. Section 9.2 terminates the Agreement upon "[t]he Company's dissolution, filing of a petition in bankruptcy under Chapter 7 of the Bankruptcy Code, or insolvency of the Company." Kadenwood has never filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. And the "insolvency" Plaintiffs invoke was not a naturally occurring financial event — the dissolution resolution Plaintiffs signed on March 15, 2023 declared that Kadenwood "is insolvent" fifteen days after Plaintiffs had already stripped Kadenwood of substantially all of its assets through the February 28, 2023 Article 9 sale. A party may not manufacture the conditions that trigger a contractual termination clause and then invoke that termination as a defense against liability for the very conduct that caused it.

*Third,* even assuming termination, Section 11.6 of the Shareholder Agreement provides that "each paragraph of this Agreement shall be viewed as separate and divisible" and that in the event any paragraph is held invalid, "the remaining paragraphs shall continue to be in full force and effect." Section 11.9 is a separate, independently enforceable provision that survives any effect Section 9.2 could have

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE

LARSON
LOS ANGELES

on other provisions. Plaintiffs argue that unlike the parties in *Oxford Preparatory Academy*, the Shareholder Agreement does not define which obligations survived termination. This argument ignores Section 11.6 entirely. Sections 11.4 and 11.6 do exactly what Plaintiffs claim is absent — they contractually preserve the Agreement's obligations through dissolution and insolvency events of precisely the kind Plaintiffs invoke here. Further, the argument ignores the survival language inherent in Section 13.5(a), which states: "Each of the Members hereto ***irrevocably*** and unconditionally consents to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof […]." [Emphasis added].

*Fourth,* substantial claims in the JAMS arbitration arise from events occurring before any putative termination date. The September 23, 2022 Loan Agreement, the November 17, 2022 Loan and Intercreditor Agreement, the false default declaration on February 1, 2023, and the Notice of Disposition of Collateral on February 15, 2023 all occurred while the Shareholder Agreement was unquestionably in full force. An arbitration clause survives termination of the underlying agreement as to claims that arose during the term. *Oxford Preparatory Acad. v. Edlighten Learning Sols.*, 34 Cal. App. 5th 605, 610 (2019). These pre-termination claims independently require arbitration regardless of any effect the purported termination could have on other provisions.

## III.    CONCLUSION

Plaintiffs' opposition does not specifically challenge the delegation clause in Section 11.9 of the Shareholder Agreement. The Court therefore lacks authority to reach the merits of Plaintiffs' arbitrability objections under *Rent-A-Center*. Additionally, Plaintiffs' reliance on *Olson v. FCA US, LLC* is misplaced: that case addressed a pure non-signatory manufacturer's attempt to leverage a consumer's dealer arbitration agreement — a scenario bearing no resemblance to this one, where

Defendants are signatories enforcing their own agreement against parties whose own signed documents, in their own stated capacities, confirm they were bound by it. If the Court reaches the merits, Plaintiffs' Subscription Agreement joinder obligated their trusts to the Shareholder Agreement, their Stockholder Consent signatures confirmed that obligation in writing two years later, and their exercise of the Agreement's core governance rights estops them from repudiating its arbitration clause now. The Court should grant the Motion, dismiss this action, and direct Plaintiffs to present their objections to the JAMS arbitrator as they contractually and irrevocably agreed.

Dated: April 30, 2026        **GOE FORSYTHE & HODGES LLP**

By: _____
Ronald S. Hodges
Ashley N. Kinder
Taylor DeRosa
Attorneys for Defendants
Brian Newberry and The Newberry Family Trust

Dated: April 30, 2026        **RIZIO LIPINSKY LAW FIRM, P.C.**

By: _____
Daren H. Lipinsky
Attorneys for Defendants
Brian Newberry and The Newberry Family Trust

LARSON
LOS ANGELES

Dated:  April 30, 2026          **LARSON LLP**


By:  _____/s/ Steven E. Bledsoe_____
     Stephen G. Larson
     Steven E. Bledsoe
     Daniel R. Lahana
Attorneys for Defendants
Glenn Russell, The Laura & Glenn Russell
Revocable Trust, Eric Johnson, Twin Harbors
LLLP, and Elysium Asset Management, LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,687 words, which complies with the word limit of L.R. 11–6.1.

Dated: April 30, 2026                 */s/ Steven E. Bledsoe*
                                      Steven E. Bledsoe

LARSON
LOS ANGELES

DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE