Ronald S. Hodges (SBN 150586)
*rhodges@goeforlaw.com*
Ashley N. Kinder (SBN 363008)
*akinder@goeforlaw.com*
Taylor DeRosa (SBN 319853)
*tderosa@goeforlaw.com*
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D., Suite 210
Irvine, CA 92614
Telephone: (949) 798-2460

Daren H. Lipinsky (SBN 190955)
*dlipinsky@riziolawfirm.com*
**RIZIO LIPINSKY HEITING, P.C.**
14771 Plaza Drive, Suite A
Tustin, CA 92780
Telephone: (714) 505-2468¶

Attorneys for Defendants
Brian Newberry and The Newberry
Family Trust

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Steven E. Bledsoe (SBN 157811)
*sbledsoe@larsonllp.com*
Daniel R. Lahana (SBN 305664)
*dlahana@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile:  (213) 623-2000

Attorneys for Defendants
Glenn Russell, The Laura & Glenn
Russell Revocable Trust, Eric Johnson,
Twin Harbors LLLP, and Elysium Asset
Management, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOBILE FORCE INVESTMENTS, LLC, an Arizona limited liability company, BRADLEY E. DAVIS, BRENT ROLAND, and GLENN ROLAND,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIAN NEWBERRY, THE NEWBERRY FAMILY TRUST, GLENN RUSSELL, THE LAURA & GLENN RUSSELL REVOCABLE TRUST, ERIC JOHNSON, TWIN HARBORS LLLP, a Nevada limited liability limited partnership, and ELYSIUM ASSET MANAGEMENT LLC, a California limited liability company,<br><br>Defendants. | Case No. 2:26-cv-02070-MEMF-DFMx<br><br>**DEFENDANTS BRIAN NEWBERRY, THE NEWBERRY FAMILY TRUST, GLENN RUSSELL, THE LAURA & GLENN RUSSELL REVOCABLE TRUST, ERIC JOHNSON, TWIN HARBORS LLLP, AND ELYSIUM ASSET MANAGEMENT, LLC'S JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION**<br><br>[*Filed concurrently with Declaration of Steven Bledsoe and [Proposed] Order*]<br><br>Judge:  Hon. Maame Ewusi–Mensah Frimpong<br>Date:  June 18, 2026<br>Time:  10:00 a.m.<br>Crtrm.:  8B, 8th Floor, First Street Courthouse |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................5

II.     FACTUAL AND PROCEDURAL BACKGROUND....................................6

        A.      The Parties and Kadenwood. ...................................................6

        B.      The Shareholder Agreement. ...................................................6

        C.      The Article 9 Sale and Its Timing. ..........................................7

        D.      The Manufactured Insolvency and Dissolution. .......................8

        E.      The Prior JAMS Arbitration and Confirmed Awards..............8

        F.      The Pending JAMS Arbitration and Status of JAMS Jurisdiction. ........8

III.    ARGUMENT ......................................................................................9

        A.      The Motion Is Procedurally Premature and There Is No Cognizable Emergency. ..........................................................9

                1.      The Motion to Compel Arbitration Will Be Heard Before This Motion and Is Fully Dispositive. ..............................9

                2.      JAMS Has Not Yet Exercised Jurisdiction and the Arbitration Proceedings Remain Nascent. .............................10

        B.      Plaintiffs Cannot Establish a Likelihood of Success on the Merits. ......................................................................11

                1.      The Delegation Clause Requires the Court to Deny the Injunction as a Matter of Law.......................................11

                2.      Plaintiffs Are Bound to Arbitrate. .............................................13

                3.      The Termination Defense Fails on Four Independent Grounds...............................................................17

        C.      Plaintiffs Cannot Establish Irreparable Harm. .......................19

        D.      The Balance of Equities Strongly Favors Defendants. .........19

        E.      The Public Interest Disfavors Enjoining Arbitration...........20

IV.     CONCLUSION ...................................................................................20

LARSON
LOS ANGELES

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abernathy v. S. California Edison*,
 885 F.2d 525 (9th Cir. 1989) ......................................................................................19

*Arthur Andersen LLP v. Carlisle*,
 556 U.S. 624 (2009) ....................................................................................................16

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ....................................................................................................20

*Bennett v. Isagenix Int'l LLC*,
 118 F.4th 1120 (9th Cir. 2024) .....................................................................................9

*Berkery v. Cross Country Bank*,
 256 F. Supp. 2d 359 (E.D. Pa. 2003) ..........................................................................18

*Buckeye Check Cashing, Inc. v. Cardegna*,
 546 U.S. 440 (2006) ....................................................................................................17

*Camping Const. Co. v. Dist. Council of Iron Workers*,
 915 F.2d 1333 (9th Cir. 1990) ....................................................................................19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) ....................................................................................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 586 U.S. 63 (2019) .................................................................................................13, 16

*Herrera v. Cathay Pac. Airways Ltd.*,
 104 F.4th 702 (9th Cir. 2024) .....................................................................................16

*Olson v. FCA US, LLC*,
 No. 24-6527, 2026 WL 934267 (9th Cir. Apr. 7, 2026) ........................................15, 16

*Rent-A-Center, West, Inc. v. Jackson*,
 561 U.S. 63 (2010) .........................................................................................11, 12, 21

*Stiner v. Brookdale Senior Living, Inc.*,
 383 F. Supp. 3d 949 (N.D. Cal. 2019)........................................................................19

LARSON
LOS ANGELES

3

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ENJOINING ARBITRATION

*Winter v. Natural Resources Defense Council,*
    555 U.S. 7 (2008) .................................................................................................. 9

**California Cases**

*Aanderud v. Superior Ct.,*
    13 Cal. App. 5th 880 (2017) ................................................................................ 12

*JSM Tuscany, LLC v. Superior Court,*
    193 Cal. App. 4th 1222 (2011) ............................................................................ 16

*Metalclad Corp. v. Ventana Environmental Organizational*
    *Partnership,*
    109 Cal. App. 4th 1705 (2003) ............................................................................ 16

*Oxford Preparatory Acad. v. Edlighten Learning Sols.,*
    34 Cal. App. 5th 605 (2019) ................................................................................ 18

**California Statutes**

Cal. Prob. Code
    § 16249 ................................................................................................................. 15

**Other State Statutes**

Ariz. Rev. Stat.
    § 14-10816(24) ..................................................................................................... 15
    § 14-11012(A) ...................................................................................................... 15

LARSON
LOS ANGELES

4

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION ENJOINING ARBITRATION

## I.    **INTRODUCTION**

Plaintiffs ask this Court to enjoin a pending JAMS arbitration — one involving over $50 million in claims arising from Plaintiffs' alleged scheme to strip Kadenwood, Inc. of substantially all of its assets in the immediate aftermath of a $6.24 million arbitration award issued against that company. The request is both procedurally defective and substantively meritless.

It is procedurally defective because there is no emergency. Defendants' Motion to Compel Arbitration and Dismiss Case, now taken under submission by this Court, was set for hearing on May 28, 2026 — prior to the hearing on Plaintiffs' preliminary injunction motion — and will resolve the very question Plaintiffs now attempt to short-circuit by emergency application. (Bledsoe Decl. ¶ 10.) A party cannot manufacture urgency by filing an injunction motion when a fully-briefed, fully-dispositive motion is already on calendar and set to be heard first. Moreover, JAMS has not agreed to exercise jurisdiction over the pending arbitration. Plaintiffs' own jurisdictional objections remain pending and unresolved before JAMS, no JAMS arbitrator has been appointed, and no schedule for the proceedings has been set. (Bledsoe Decl. ¶¶ 5, 7–9.) The absence of any final jurisdictional decision by JAMS further eviscerates any claim of irreparable imminent harm that would justify the extraordinary remedy of a preliminary injunction.

The motion is substantively meritless because Plaintiffs cannot establish a likelihood of success. Section 11.9 of the Kadenwood Shareholder Agreement — the agreement Plaintiffs themselves attached to their own Complaint — contains a textbook delegation clause: each Shareholder "irrevocably and unconditionally consents to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." Under binding Supreme Court and Ninth Circuit authority, because Plaintiffs have not specifically and independently

LARSON
LOS ANGELES

challenged that delegation clause, this Court lacks authority to reach the merits of Plaintiffs' arbitrability objections at all. Even if the Court were to reach those merits, Plaintiffs' own signed documents — executed in their express capacities as shareholders under the very agreement they now disavow — foreclose every argument they advance.

For these reasons, and as set forth more fully below, the motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties and Kadenwood.

Plaintiffs are former controlling shareholders of Kadenwood, Inc. Brent Roland is the Trustee and legal representative of the Roland Family Trust, which held 2,688,300 Series B shares in Kadenwood. Brent Roland is also identified as a Shareholder in Amendment No. 1 to the Shareholder Agreement and was given a seat on the Kadenwood Board as result of the shares he and his affiliates held in Kadenwood. (See Bledsoe Decl. ¶ 12, Ex. B [Amend. No. 1 at 1(b)].) Glenn Roland is the Trustee and legal representative of the Roland Family Support Trust, which held 714,367 Series B shares in Kadenwood. (See also Bledsoe Decl. ¶ 15, Ex. D [Cap Table].) Bradley E. Davis is the Trustee of the Bradley E. Davis Trust UTA dated January 1, 2014, which held 3,391,817 Series B Preferred Shares in Kadenwood. (Bledsoe Decl. ¶ 15, Ex. D.)

### B.    The Shareholder Agreement.

Section 11.9 of the Kadenwood, Inc. Shareholder Agreement — which Plaintiffs themselves attached to their Complaint as Exhibit 1 — states that each Shareholder "irrevocably and unconditionally consents to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." (Bledsoe Decl. ¶ 12, Ex. B.) Section 2.2 of the Shareholder Agreement

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION

required every new shareholder to "execute[] and agree[] to be bound by the terms of this Agreement." (Bledsoe Decl. ¶ 13, Ex. C.) The Subscription Agreement required each Series B investor to "agree to be bound by all the terms and provisions of the Shareholder Agreement" and to deliver a signed Joinder Agreement as a mandatory closing condition. (Bledsoe Decl. ¶ 13, Ex. C.)

**Plaintiffs' Execution of the Stockholder Consent.**

On February 28, 2023, in their acknowledged capacities as shareholders under the Shareholder Agreement, Plaintiffs Bradley Davis, Brent Roland, and Glenn Roland voted their shares and signed the Written Consent in Lieu of the 2023 Annual Meeting of the Stockholders of Kadenwood, Inc. (the "Stockholder Consent"). (Bledsoe Decl. ¶¶ 18–21, Ex. G.) The Stockholder Consent recites, in relevant part: "WHEREAS, the Company and its stockholders are parties to that certain Kadenwood Inc. Shareholder Agreement dated as of July 7, 2021, as amended by an Amendment No. 1 dated March 31, 2022." (Bledsoe Decl. ¶ 19, Ex. G at TD 600.) Plaintiffs Bradley E. Davis, Brent Roland, and Glenn Roland signed the Stockholder Consent as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)" and separately in their capacity as "Series B Holders (as defined in the Shareholder Agreement)," voting 3,391,817, 2,688,300, and 714,367 shares, respectively. (Bledsoe Decl. ¶ 20, Ex. G at TD 599–607.)

### C.   The Article 9 Sale and Its Timing.

Nine days after a $6.24 million Partial Award was issued in Defendants' prior JAMS arbitration against Kadenwood on January 23, 2023, Plaintiffs declared a false default on their insider loans to Kadenwood, which had been structured without disclosure to Defendants while the prior arbitration was ongoing. (Bledsoe Decl. ¶ 23.) Through the February 28, 2023 Article 9 sale executed simultaneously with the Stockholder Consent, Plaintiffs transferred substantially all of Kadenwood's assets to B&B AZ Holdings, LLC and received membership interests in that entity. (Bledsoe Decl. ¶¶ 21–22.)

### D.    The Manufactured Insolvency and Dissolution.

On March 15, 2023 — fifteen days after Plaintiffs had already stripped Kadenwood of substantially all of its assets — Plaintiffs executed a second stockholder consent declaring Kadenwood insolvent and authorizing its liquidation and dissolution. (Bledsoe Decl. ¶ 22, Ex. H.) Kadenwood has never filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. (Bledsoe Decl. ¶ 27.) Kadenwood's former CFO, Robert Krakauer, testified under oath that the Respondent lenders received complete and accurate disclosures about Kadenwood's financial situation and the arbitration risks. (Bledsoe Decl. ¶ 16, Ex. E.)

### E.    The Prior JAMS Arbitration and Confirmed Awards.

JAMS Case No. 1200058540, before the Honorable Rosalyn Chapman (Ret.), resulted in a Partial Award dated January 23, 2023, a Second Partial Award dated April 24, 2023, and a Final Award dated February 22, 2024. (Bledsoe Decl. ¶ 23.) On November 19, 2024, the Orange County Superior Court entered judgment confirming the Final Award in the amount of $10,620,340.63 in favor of Newberry against Kadenwood. (Bledsoe Decl. ¶ 25.) On March 24, 2025, the United States District Court for the Central District of California entered judgment confirming the Final Award in the amount of $9,451,221.69 in favor of the Elysium Parties against Kadenwood. (Bledsoe Decl. ¶ 26.)

### F.    The Pending JAMS Arbitration and Status of JAMS Jurisdiction.

On January 20, 2026, Defendants filed a Demand for Arbitration with JAMS against Plaintiffs and other respondents, bearing JAMS Case No. 5200003013. (Bledsoe Decl. ¶ 3.) On February 17, 2026, Defendants filed an Amended Demand for Arbitration. (Bledsoe Decl. ¶ 4.) On February 10, 2026, Respondents Mobile Force Investments, LLC, Bradley E. Davis, Brent Roland, and Glenn Roland filed written Objections to Jurisdiction with JAMS, asserting that they are not parties to the Shareholder Agreement and that the Agreement terminated when Kadenwood became insolvent. (Bledsoe Decl. ¶ 5.) On March 3, 2026, a separate group of

8

Respondents likewise filed written Objections to Jurisdiction. (Bledsoe Decl. ¶ 6.) On April 10, 2026, Respondents filed a Reply in Support of their Objections, and as of that date, JAMS confirmed the matter was "still under review." (Bledsoe Decl. ¶¶ 7–9.) As of the date of this opposition, JAMS has not issued a Commencement Letter, no arbitrator has been appointed, no procedural schedule has been set, and no discovery is underway. (Bledsoe Decl. ¶ 8.)

The Pending Motion to Compel Arbitration. On April 9, 2026, Defendants filed their Joint Motion to Compel Arbitration and Dismiss Case [Dkt. 36]. (Bledsoe Decl. ¶ 10.) That motion is fully briefed and has been taken under submission by this Court. It was set for hearing on May 28, 2026 — before the hearing on Plaintiffs' preliminary injunction motion. (Bledsoe Decl. ¶ 10.)

## III.    ARGUMENT

To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). Plaintiffs cannot satisfy any of these elements.

### A.    The Motion Is Procedurally Premature and There Is No Cognizable Emergency.

#### 1.    The Motion to Compel Arbitration Will Be Heard Before This Motion and Is Fully Dispositive.

Preliminary injunctive relief is an extraordinary remedy that will only be granted if there is no adequate remedy at law for the harm toward which it is directed. *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024). It is therefore axiomatic that courts should not grant injunctive relief where ordinary motion practice provides an adequate remedy on the same timeline. Here, Defendants' Motion to Compel Arbitration is already fully briefed and has been

9

taken under submission by the Court. (Bledsoe Decl. ¶ 10.) That motion will resolve, as a final adjudication on the merits, the precise legal questions Plaintiffs now ask the Court to address on a preliminary basis: whether Plaintiffs are parties to the arbitration agreement, whether the agreement was validly terminated, and whether the scope of the arbitration clause covers Plaintiffs' objections. If the Court grants the motion to compel, Plaintiffs will be directed to JAMS and the injunction becomes moot in Plaintiffs' disfavor. If the Court denies the motion, Plaintiffs will obtain through ordinary motion practice the very relief they seek by preliminary injunction, without need for emergency relief at all.

A party cannot manufacture urgency sufficient to support extraordinary injunctive relief when a fully dispositive motion was already on calendar and set for hearing ahead of the injunction motion itself. *Id.* To permit a preliminary injunction to proceed on these facts would invert the orderly disposition of motions already pending before the Court, allow Plaintiffs to obtain binding emergency rulings on issues the Court has already set for orderly resolution, and prejudge the outcome of Defendants' motion without allowing it to be properly decided.

Plaintiffs cannot demonstrate any harm that would occur in the interval between now and the resolution of the motion to compel arbitration that ordinary motion practice cannot adequately prevent. There is no emergency. The preliminary injunction motion should be denied or, at minimum, held in abeyance pending the outcome of the motion to compel arbitration.

### 2. JAMS Has Not Yet Exercised Jurisdiction and the Arbitration Proceedings Remain Nascent.

Plaintiffs' claimed emergency is further undermined by the undisputed fact that JAMS has not agreed to exercise jurisdiction over the pending arbitration. Plaintiffs filed written objections to JAMS jurisdiction on the same grounds they assert in this Court — that they are not parties to the Shareholder Agreement and that the Agreement has been terminated. (Bledsoe Decl. ¶ 5.) Those objections were

10

supplemented by a reply filed April 10, 2026. (Bledsoe Decl. ¶ 7.) As of the date of this filing, JAMS has not issued a Commencement Letter; the file remains under administrative review. (Bledsoe Decl. ¶¶ 8–9.) No JAMS arbitrator has been appointed, no preliminary hearing schedule has been set, and no discovery is underway. (Bledsoe Decl. ¶ 8.)

Where no arbitration proceeding has materially advanced — where JAMS itself has not yet decided whether to proceed — there is no concrete, immediate, or irreparable harm from the pendency of the demand. Plaintiffs are asking this Court to enjoin a proceeding that may never take place in its proposed form, based on a jurisdictional determination that JAMS has not yet made. This is the definition of a non-emergency. The fundamental prerequisite for injunctive relief — concrete, imminent, and irreparable injury — is absent.

**B.      Plaintiffs Cannot Establish a Likelihood of Success on the Merits.**

**1.      The Delegation Clause Requires the Court to Deny the Injunction as a Matter of Law.**

The threshold question is who decides arbitrability: this Court or the JAMS arbitrator. The answer, under controlling Supreme Court precedent, is the JAMS arbitrator — and that answer forecloses Plaintiffs' likelihood of success on the merits entirely.

The FAA limits the role of the judiciary "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). But where a delegation clause exists, the scope of the court's inquiry is further narrowed. Under the FAA, parties may delegate threshold arbitrability questions — including whether the agreement exists, whether a party is bound, and whether the agreement has been terminated — to the arbitrator by clear and unmistakable agreement. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010). Once a valid delegation clause exists, a court does not have authority to

decide arbitrability unless the resisting party specifically challenges the delegation clause itself on independent grounds — a challenge to the broader agreement is legally insufficient. *Rent-A-Center*, 561 U.S. at 71-72. California applies the same principle. *Aanderud v. Superior Ct.*, 13 Cal. App. 5th 880, 891-92 (2017).

Section 11.9 of the Shareholder Agreement is unambiguous. (Bledsoe Decl. ¶ 12, Ex. B.) Each Shareholder "irrevocably and unconditionally consent[ed] to the exclusive jurisdiction of JAMS to any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." This self-referential delegation clause directly covers both of Plaintiffs' objections. Plaintiffs' first objection — that they were never parties to the Shareholder Agreement — is a challenge to the "scope or applicability" of Section 11.9 to them. Plaintiffs' second objection — that the Agreement was terminated — is a dispute about the Agreement's "termination." Both are expressly delegated.

Plaintiffs have not specifically challenged the delegation clause in Section 11.9 on any independent ground. Their challenge is directed at the Shareholder Agreement as a whole — they contend they were never parties to it, and that it was terminated — but neither argument is directed specifically at Section 11.9 itself. Under *Rent-A-Center*, "[a] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." 561 U.S. at 70. Because Plaintiffs have not specifically and independently challenged Section 11.9, this Court lacks authority to reach the merits of Plaintiffs' arbitrability objections. The Court should direct Plaintiffs to JAMS.

Section 11.9's incorporation of the JAMS Comprehensive Arbitration Rules provides a second, independent basis for delegation. JAMS Comprehensive Rule 11(b) grants the arbitrator independent authority to hear and determine all challenges to jurisdiction and arbitrability, including "who are proper Parties to the

LARSON
LOS ANGELES

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION

Arbitration." The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019).

Plaintiffs' motion for a preliminary injunction asks this Court to do precisely what binding precedent prohibits — reach the merits of arbitrability questions contractually delegated to the JAMS arbitrator. That alone is fatal to any claim of likelihood of success on the merits.

### 2. <u>Plaintiffs Are Bound to Arbitrate.</u>

Even setting aside the delegation clause, the merits confirm that Plaintiffs are bound to arbitrate.

#### a. <u>Plaintiffs' Own Documents Establish Party Status.</u>

The strongest evidence in this record is Plaintiffs' own signatures. On February 28, 2023, Plaintiffs Bradley Davis, Brent Roland, and Glenn Roland each signed the Stockholder Consent. (Bledsoe Decl. ¶¶ 18–20, Ex. G.) The Stockholder Consent explicitly states that the Company "and its stockholders are parties to that certain Kadenwood Inc. Shareholder Agreement." (Ex. G at TD 600.) (Bledsoe Decl. ¶ 19.) They did not sign as neutral third parties. Each signed as "CONTROLLING SHAREHOLDERS (as defined in the Shareholder Agreement)." (Bledsoe Decl. ¶ 20, Ex. G at TD 599–604.) Bradley Davis, Brent Roland, and Glenn Roland also separately signed in their capacity as "Series B Holders (as defined in the Shareholder Agreement)," beside the specific number of shares they were voting — 3,391,817 for the Bradley E. Davis Trust; 2,688,300 for the Roland Family Trust; and 714,367 for the Roland Family Support Trust. (Bledsoe Decl. ¶ 20, Ex. G at TD 606–07.)

Plaintiffs' assertion that they were "never" parties to the Shareholder Agreement is irreconcilable with a document in which they expressly acknowledged being stockholder parties to that Agreement — a document they themselves

13

executed in their defined capacities under it. In addition, Brent Roland was also identified as a Shareholder in Amendment No. 1 to the Shareholder Agreement and was given a seat on the Kadenwood Board as result of the shares he and his affiliates held in Kadenwood. (See Bledsoe Decl. ¶ 12, Ex. B [Amend. No. 1 at 1(b)].)

b.    The Subscription Agreement and Joinder Mechanism Independently Bound Each Plaintiff.

Section 2.2 of the Shareholder Agreement required every new shareholder to "execute[] and agree[] to be bound by the terms of this Agreement." The Subscription Agreement required each Series B investor to "agree to be bound by all the terms and provisions of the Shareholder Agreement" and to deliver a signed Joinder Agreement as a mandatory closing condition. (Bledsoe Decl. ¶¶ 12–14, Exs. B–C.) Kadenwood's CFO, Robert Krakauer, confirmed under oath that every Kadenwood shareholder was required to sign a Shareholder Agreement or a Joinder. (Bledsoe Decl. ¶ 16, Ex. E.) Kadenwood's COO, Douglas Weekes, provided identical testimony. (Bledsoe Decl. ¶ 17, Ex. F.) The February 5, 2023 Capitalization Table lists each of the relevant trusts as Kadenwood shareholders holding Series B Preferred Shares — the class that independently required execution of Subscription and Joinder Agreements as a condition of acquiring shares. (Bledsoe Decl. ¶ 15, Ex. D.)

c.    The Trustee-Versus-Individual Argument Presents a False Dichotomy.

Confronted with this record, Plaintiffs retreat to the argument that each signature was affixed not by the Individual Plaintiffs as individuals, but by trustees acting solely on behalf of legally distinct trust entities, such that the signatories and the persons Defendants seek to compel are not the same. This argument fails.

The definition of "Shareholder" in Section 1.41 of the Shareholder Agreement includes both the Shareholder and the "legal representatives" of the Shareholder. (Bledsoe Decl. ¶ 12, Ex. B.) A trustee is, by definition, the legal representative of

14

the trust — a point Plaintiffs themselves concede when invoking Arizona trust law to establish that "the legal representative of a trust governed by Arizona law is the trustee." The Individual Plaintiffs thus argue both that they signed only as legal representatives of their trusts and that being a legal representative exempts them from the Agreement's express reach — a position the Agreement's own text will not support.

Under the Arizona Trust Code, a trustee holds legal title to trust property in the trustee's fiduciary capacity and is both authorized and required to sue and be sued in that capacity with respect to trust assets and obligations arising from the administration of the trust. *See* Ariz. Rev. Stat. § 14-11012(A); Ariz. Rev. Stat. § 14-10816(24). Under California law, a trustee is vested with legal title and exclusive management authority over trust property and is the real party in interest in all proceedings affecting trust assets. Cal. Prob. Code § 16249. Naming each Individual Plaintiff in both capacities is not duplicative — it is essential to ensuring that any arbitral award is enforceable against both the individual Plaintiffs personally and the trust assets over which they exercise fiduciary control, and that Plaintiffs cannot argue post-award that the judgment runs only against the individual and not the trust, or only against the trust and not the individual.

Plaintiffs' Reliance on *Olson v. FCA US, LLC* Is Misplaced. Plaintiffs are expected to rely on *Olson v. FCA US, LLC*, No. 24-6527, 2026 WL 934267 (9th Cir. Apr. 7, 2026), for the proposition that non-parties cannot be compelled to arbitration. *Olson* addressed a pure non-signatory automobile manufacturer attempting to leverage an arbitration agreement between a consumer and a car dealership — a contract to which the manufacturer was wholly unrelated. That is the structural inverse of this case. Defendants are signatories seeking to enforce an agreement that Plaintiffs' own signed documents confirm they were bound by. (Bledsoe Decl. ¶¶ 18–21, Ex. G.) Further, the *Olson* court itself acknowledged that a litigant may compel arbitration if contract law in the relevant jurisdiction would

15

allow enforcement — and here, the recognized exceptions are squarely present: the Agreement's definition of "Shareholder" expressly includes "legal representatives," the Individual Plaintiffs personally signed the Stockholder Consent in expressly-defined capacities under the Agreement, and equitable estoppel independently precludes repudiation. Moreover, the *Olson* court's own *Henry Schein* analysis confirms Defendants' position: the *Olson* court distinguished *Henry Schein* precisely because "in *Henry Schein*, it was undisputed that Schein was effectively a party to the arbitration agreement containing the delegation clause." That is this case.

                d.      <u>Equitable Estoppel Independently Precludes Repudiation.</u>

Under the "direct benefits" theory, a party who exercises rights under or accepts benefits from a contract containing an arbitration clause cannot simultaneously disclaim that clause. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 710 (9th Cir. 2024); *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1237 (2011); *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705, 1713-14 (2003).

On February 28, 2023, in their acknowledged capacities as Controlling Shareholders and Series B Holders under the Shareholder Agreement, Plaintiffs voted their shares to terminate it and simultaneously seized substantially all of Kadenwood's assets through the Article 9 sale. (Bledsoe Decl. ¶¶ 20–21, Ex. G.) They transferred those assets to B&B AZ Holdings, LLC and received membership interests in that entity. Having accepted the economic fruits of those shareholder voting rights — including the seizure of the company's entire asset base — Plaintiffs cannot now disclaim the arbitration obligation that was a non-negotiable condition of their shareholder status. The equitable estoppel analysis is also the precise opposite of *Olson*, where the plaintiff's claims arose entirely from California statutes and a manufacturer's warranty unrelated to the lease agreement. Here,

LARSON
LOS ANGELES

Defendants' claims arise directly from Plaintiffs' exercise of rights under the Shareholder Agreement itself — their voting of shares, their declaration of the Article 9 sale, and their termination of the Agreement. There is no more direct intertwining with a contract's terms than exercising its core governance rights while simultaneously stripping the company of its assets.

### 3. The Termination Defense Fails on Four Independent Grounds.

Plaintiffs' anticipated argument that the Shareholder Agreement was terminated and thus extinguished any arbitration obligation fails on four separately dispositive grounds.

First, the question of whether the Agreement was validly terminated is itself expressly delegated to the arbitrator. Section 11.9 expressly provides for arbitration of disputes about the Agreement's own "breach, termination, enforcement, interpretation or validity." (Bledsoe Decl. ¶ 12, Ex. B.) A party cannot invoke the very termination that Defendants are challenging in the pending arbitration as grounds for refusing to submit to that arbitration. Under the FAA's severability doctrine, an arbitration clause survives challenges to the validity or continued existence of the broader contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006).

Second, Section 9.2 was not validly triggered. Section 9.2 terminates the Agreement upon "[t]he Company's dissolution, filing of a petition in bankruptcy under Chapter 7 of the Bankruptcy Code, or insolvency of the Company." Kadenwood has never filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. (Bledsoe Decl. ¶ 27.) And the "insolvency" Plaintiffs invoke was not a naturally occurring financial collapse. The dissolution resolution Plaintiffs signed on March 15, 2023 declared Kadenwood "insolvent" — a declaration made fifteen days after Plaintiffs had already stripped Kadenwood of substantially all of its assets through the February 28, 2023 Article 9 sale. (Bledsoe Decl. ¶¶ 21–22,

Exs. G–H.) Kadenwood's former CFO, Robert Krakauer, testified under oath that the Respondent lenders received complete and accurate disclosures about Kadenwood's financial situation and the arbitration risks — directly refuting the stated basis for the default declaration. (Bledsoe Decl. ¶ 16, Ex. E.) A party may not manufacture the conditions that trigger a contractual termination clause and then invoke that termination as a shield against liability for the very conduct that caused it.

Third, even accepting the purported termination, the arbitration clause independently survives by operation of the Agreement's severability and survival provisions. Section 11.6 of the Shareholder Agreement provides: "It is intended that each paragraph of this Agreement shall be viewed as separate and divisible. In the event that any paragraph shall be held to be invalid, the remaining paragraphs shall continue to be in full force and effect." (Bledsoe Decl. ¶ 12, Ex. B.) Section 11.9 is a separate, independently enforceable provision. Even if Section 9.2 could affect some provisions of the Agreement, Section 11.9 survives under Section 11.6's plain terms. Sections 11.4 and 11.6 do exactly what Plaintiffs claim is absent — they contractually preserve the Agreement's obligations through dissolution and insolvency events of precisely the kind Plaintiffs invoke.

Fourth, even accepting February 28, 2023 as the termination date for purposes of argument — which Defendants expressly dispute — substantial claims in the JAMS arbitration arise from events occurring before that date. The September 23, 2022 Loan Agreement, the November 17, 2022 Loan and Intercreditor Agreement appointing Bradley E. Davis as agent for all insider lenders, the false default declaration on February 1, 2023, and the Notice of Disposition of Collateral on February 15, 2023 all occurred while the Shareholder Agreement was unquestionably in full force. (Bledsoe Decl. ¶ 23.) An arbitration clause survives termination of the underlying agreement as to claims that arose during the term. *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 369 (E.D. Pa. 2003); *Oxford*

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION

*Preparatory Acad. v. Edlighten Learning Sols.*, 34 Cal. App. 5th 605, 610 (2019). These pre-termination claims independently require arbitration regardless of any alleged effect on the Agreement's other provisions.

**C.     Plaintiffs Cannot Establish Irreparable Harm.**

Plaintiffs cannot demonstrate irreparable harm for two independent reasons. First, as established above, the JAMS arbitration is nascent. Plaintiffs' own jurisdictional objections remain pending and unresolved before JAMS; the matter is "still under review." (Bledsoe Decl. ¶¶ 8–9.) No arbitrator has been appointed, no procedural schedule has been set, and no discovery is underway. (Bledsoe Decl. ¶ 8.) There is no imminent, concrete harm from the mere pendency of an arbitration demand that JAMS has not yet agreed to administer. Any alleged harm from participation in arbitration proceedings is speculative and premature.

Second, the harm Plaintiffs claim — being required to participate in arbitration — is not "irreparable" in the legal sense. If Plaintiffs are correct that they are not bound to arbitrate, any arbitral award entered against them will be unenforceable and subject to vacatur. The availability of judicial review of any arbitral award through post-award proceedings provides an adequate legal remedy. Courts in the Ninth Circuit consistently hold that having to arbitrate a dispute does not constitute irreparable harm where the resulting award remains subject to judicial review. *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990); *Abernathy v. S. California Edison*, 885 F.2d 525, 529 (9th Cir. 1989); also see *Stiner v. Brookdale Senior Living, Inc.,* 383 F. Supp. 3d 949, 955 (N.D. Cal. 2019).

**D.     The Balance of Equities Strongly Favors Defendants.**

Plaintiffs orchestrated the very circumstances they now cite as the basis for enjoining Defendants' arbitration. They stripped Kadenwood of its assets nine days after a $6.24 million arbitration award (Bledsoe Decl. ¶ 23), declared a manufactured insolvency to trigger termination of the Shareholder Agreement

19

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION

fifteen days after the fact (Bledsoe Decl. ¶ 22, Ex. H), and then invoked that manufactured termination in this Court as grounds for a preliminary injunction. The first written notice to Defendants of any of these events was the March 24, 2023 notice from Bryan Perkinson — over three weeks after the Article 9 sale. Granting Plaintiffs injunctive relief under these circumstances would reward precisely the conduct Defendants are seeking to redress in the JAMS arbitration.

By contrast, Defendants face severe prejudice if the injunction issues. An injunction would prevent Defendants from pursuing more than $50 million in claims arising from Plaintiffs' alleged fraudulent asset transfer, during a period in which statutes of limitation may continue to run and evidence may be lost. The balance of equities tips sharply in Defendants' favor.

**E.** **The Public Interest Disfavors Enjoining Arbitration.**

The Federal Arbitration Act embodies a strong federal policy favoring arbitration as an alternative to litigation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Enjoining a contractually-mandated JAMS arbitration — particularly on the basis of arguments that a binding delegation clause commits to the arbitrator — runs directly counter to that policy. The public interest is not served by permitting parties who exercised contractual rights as shareholders (Bledsoe Decl. ¶¶ 18–21), accepted the economic benefits of those rights, and then strategically manufactured conditions designed to nullify their arbitration obligations (Bledsoe Decl. ¶ 22), to avoid their irrevocable and unconditional consent to JAMS jurisdiction through a preliminary injunction.

**IV.** **CONCLUSION**

Plaintiffs' motion for a preliminary injunction should be denied. The motion is procedurally defective: the hearing on Defendants' fully-briefed Motion to Compel Arbitration — which has been taken under submission and is dispositive of the issues Plaintiffs raise here — was scheduled before the injunction hearing (Bledsoe Decl. ¶ 10), and JAMS has not yet exercised jurisdiction, with the matter

20

still under administrative review and no arbitrator appointed (Bledsoe Decl. ¶¶ 8–9), eliminating any cognizable emergency. The motion is also substantively meritless: Plaintiffs have not challenged the delegation clause in Section 11.9 of the Shareholder Agreement (Bledsoe Decl. ¶ 12, Ex. B), which forecloses this Court's authority to reach the merits of Plaintiffs' arbitrability objections under *Rent-A-Center*. Even on the merits, Plaintiffs' own signed documents, executed in their express capacities as shareholders (Bledsoe Decl. ¶¶ 18–21, Ex. G), establish that they are bound to arbitrate — and their termination defense fails on four independent grounds, including because Kadenwood never filed for Chapter 7 bankruptcy (Bledsoe Decl. ¶ 27) and the insolvency they invoke was manufactured after they stripped the company of its assets (Bledsoe Decl. ¶¶ 21–22). Plaintiffs cannot establish irreparable harm, the balance of equities favors Defendants, and the public interest disfavors enjoining a contractually-mandated arbitration. The Court should deny the motion in its entirety.

Dated: May 20, 2026                    **GOE FORSYTHE & HODGES LLP**

By: _____
            Ronald S. Hodges
            Ashley N. Kinder
            Taylor DeRosa
            Attorneys for Defendants
            Brian Newberry and The Newberry Family Trust

Dated: May 20, 2026                    **RIZIO LIPINSKY LAW FIRM, P.C.**

By: _____
            Daren H. Lipinsky
            Attorneys for Defendants
            Brian Newberry and The Newberry Family Trust

LARSON
LOS ANGELES

21

Dated:  May 20, 2026          **LARSON LLP**


By:  _____/s/ Steven E. Bledsoe_____

Stephen G. Larson
Steven E. Bledsoe
Daniel R. Lahana

Attorneys for Defendants
Glenn Russell, The Laura & Glenn Russell Revocable Trust, Eric Johnson, Twin Harbors LLLP, and Elysium Asset Management, LLC

LARSON
LOS ANGELES

22

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 5,148 words, which complies with the word limit of L.R. 11–6.1.


Dated: May 20, 2026                    */s/ Steven E. Bledsoe*
                                       Steven E. Bledsoe

23

DEFENDANTS' JOINT OPPOSITION TO INDIVIDUAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION ENJOINING ARBITRATION